REBECCA G. HUGHES v. JAMES MILLIGAN, *as Trustee of Washington Township, Jackson County.*

1. PUBLIC HIGHWAYS—*Section Lines*—*Valid Statute.* Chapter 57, Laws of 1869, declaring section lines in certain counties, naming them, public highways, is not in contravention of ₰ 17, article 2 of the constitution, which provides that in all cases where a general law can be made applicable no special law shall be enacted. (*The State v. Hitchcock*, 1 Kas. 178; *Beach v. Leahy*, 11 id. 23; *Comm'rs of Norton Co. v. Shoemaker*, 27 id. 77.)

2. HUSBAND—*Freeholder.* The husband living with his wife upon land owned by her, and occupied by them as their homestead, is a freeholder.

3. DAMAGES—*Opening Road*—*Injunction.* Where section lines in a certain county are declared by statute to be public highways, and the only provision concerning the payment of damages to the landowners is that the law in reference to damages in the general road law shall apply, and no viewers are appointed and no notice given the owner of the taking of his land and the opening of the road, *held,* that he may enjoin the road overseer of the road district and the township trustee from opening such road.

*Error from Jackson District Court.*

ACTION brought by the plaintiff in error to enjoin the opening of a highway through her land. At the trial, at the November term, 1885, a judgment was rendered for the defendants. The court made findings of fact as follows:

"1. The plaintiff at the commencement of this action was and still is the owner and seized in fee of the premises in her petition described, and has been the owner thereof since the 12th day of October, 1883.

"2. At the commencement of this action all of said premises was inclosed with a good and substantial fence erected in the summer of 1884, and has since been used and occupied by plaintiff as stated in her petition.

"3. The defendant James Milligan is the duly-elected and qualified trustee of Washington township in said county, and the defendant M. L. Edwards is the duly-elected and qualified overseer of road district No. 1 in said Washington township, within the limits of which road district said premises are situated as stated in plaintiff's petition; and at and before the

commencement of this action the defendants as such trustee and road overseer respectively were threatening, intending and about to throw down and remove a part of said fence so inclosing said premises of the plaintiff, for the purpose of opening a highway upon said section line constituting the west boundary of said premises.

"4. On the 6th day of January, 1871, a petition, signed by ten freeholders of the township where the road was to be, was presented to the board of county commissioners of Jackson county, asking for a road commencing at the south line of the county, on the section line two miles east of the west line of the county, and to run north on said section line to the north line of township 8, which road was, on the same day, granted by the said county board, and a plat thereof was afterward, and before April 10, 1872, recorded in the road record of said county.

"5. At the time of the presentation of said petition to the county board, the adjacent lands to said section line, on both sides for one and one-half miles south of the north line of said township 8, were uninclosed, and until the plaintiff inclosed the lands in the petition mentioned, on the east side, in 1884. From about 1871 the south ten and one-half miles of the supposed road were traveled as a highway, along the section line above mentioned, at the north end of which ten and one-half point it splits into two branches, east and west, and after forming an ellipse, the greatest east-and-west diameter of which was about one-half mile, the branches came together again upon the section line, very little north of the said north line of township 8, and thence continued north indefinitely. Prior to the time plaintiff fenced the lands mentioned, no work, as and for a road, was done upon the section line forming the west boundary of plaintiff's land, nor had there ever been any public travel upon such boundary, the same being rough and uneven, rendering travel thereon inconvenient, perhaps impracticable."

On the foregoing findings of fact the court made the following conclusions of law:

"1. By chapter 57 of the Laws of 1869, and the action of the board of county commissioners, a highway was established along the section line mentioned, from the south line of the county to the north line of township 8.

"2. The defendants are entitled to a decree herein adjudging that there is a legally laid out highway on the section line

between said sections 5 and 6, and dissolving the temporary injunction heretofore granted herein."

Thereupon the plaintiff moved the court to set aside the foregoing findings of fact and conclusions of law, which motion the court overruled, and adjudged that the temporary injunction heretofore granted in this action be and the same is hereby discharged, and decreed that defendants have and recover from the plaintiff their costs herein to be taxed. The plaintiff brings the case here.

By chapter 67, Laws of 1867, section lines were declared public highways in certain counties, naming them. In 1868 § 2 of said chapter was amended by engrafting therein the following: "That the provisions relative to damages, in the general road law, shall apply in all cases where damages are claimed under this act." This law was again amended, in 1869, by including Jackson county in the list of counties in which section lines were declared public highways. When the petition mentioned in finding four was presented to the board of county commissioners, at the January term, 1871, there was no record made in their journal showing any order or proceedings in the matter of opening this alleged highway, but in the road record containing a map of the proposed road there was this written under the plat: "The above road was granted by county board, January 6, 1871.— E. D. ROSE, County Clerk." In April, 1871, in the road record of Jackson county, is the following: "No. 46.— M. Roark road on section line. On presentation of a proper petition signed by the requisite number, according to law, the county board ordered the following road opened. The road granted by county board January 6, 1871.— E. D. ROSE, County Clerk." Rose, who was the county clerk at the time the above entries were made, testified that the second entry was made under his direction, in order to make the record more formal and complete than the first one. It appears from the petition that there were eleven signers, nearly all of whose names were evidently in the same handwriting, and some of them are almost unintelligible. Of the eleven whose names are affixed to the peti-

tion, three owned no land in their own names in the vicinity of this road, but were living on land owned by their wives, and occupied by them jointly as their homestead.

*Hayden & Hayden,* for plaintiff in error.
*Rafter & Robinson,* for defendant in error.

Opinion by .HOLT, C.: The plaintiff complains, first, that chapter 67, Laws of 1867, as amended by chapter 57, Laws of 1869, is unconstitutional, contravening § 17, article 2, which provides "that in all cases where a general law can be made applicable no special law shall be enacted." This is no longer an open question in this state. It has been held that the legislature must determine whether the purposes of a particular law can or cannot be expediently accomplished by a general law. (*The State v. Hitchcock,* 1 Kas. 178; *Beach v. Leahy,* 11 id. 23; *Comm'rs of Norton Co. v. Shoemaker,* 27 id. 77.)

The second complaint is, that the petition for opening the alleged road did not state facts sufficient to authorize the board of county commissioners to order the opening thereof. So far as that objection relates to the signing of the petition, we think from the examination of a photographic copy that the names were not very plainly written, and might have been, and probably were, signed by one person; but he may have been duly authorized by the others to sign their names. Some of the signers were Indians, and only one of their names — either the given or surname — was signed; there is some testimony showing that this was no unusual way of signing among them. The county board acted upon this petition, and found it signed by the requisite number, and the district court also made a like finding. We are unwilling to disturb these findings; they are supported by some evidence, and are sufficient here.

The third objection is, that said petition was not signed by ten freeholders. It is established by the evidence that eight of the eleven whose names appear upon the petition, owned land in the vicinity of the road, and that the other three were living with their wives upon land occupied by them as a home-

stead, the wife having the legal title to the land in each case. The question to be decided therefore is, whether a husband is a freeholder who lives with his wife on land of which she has the title, when occupied by them jointly as a homestead. A freehold estate is defined by Blackstone to be "such an estate in lands as is conveyed by livery of seisin, and may be in fee simple or conditional fee, and may be for life only." (2 Bl. Com., p. 126.) By the common law the estate of dower was a freehold estate; and also the estate by the curtesy; and although in the latter the title to the land was in the wife, yet upon the birth of a child the husband was called tenant by the curtesy initiate, and upon the death of the wife he was called tenant by curtesy consummate. The interest that the husband has in the homestead of the wife is a different estate from that by the curtesy initiate, but in some respects at least it is analogous. It is probably a greater and more definite estate under our homestead law than given by the common law of England under the name of the estate by curtesy. It is at least a life estate, conditioned upon his occupying the premises during his lifetime, and not executing a conveyance thereof. In several of the states of the Union the interest of the wife in the homestead owned by the husband has been denominated a freehold estate. We therefore believe that the interest of the husband in the homestead owned by his wife, while they jointly occupy it, makes the husband during their marriage and occupancy a freeholder.

Another objection is, that no sufficient record was ever made of the actions of the county board in granting the alleged highway, and steps looking to the opening thereof. The entry in the road record in the first place was very meager, yet we think it was probably sufficient. There was a plat with the road marked plainly thereon, and although there should have been an entry in the journal of the county commissioners, its absence does not make the order a nullity. Section 67, General Statutes of 1868, provided that the county board shall require the reports, surveys and plats of roads to be recorded. There was no report in this case, nor survey, as the section line

was declared by law to be a highway; but the plat was duly made and placed on record in a book called the road record.

The remaining objection of the plaintiff is, that no notice was ever given to the land-owners of the application for the opening and laying out of the alleged road. We think this objection valid. The statutes declared section lines in Jackson county public highways, but such a law, without providing for any compensation to the land-owners for the land taken, would be unconstitutional. (*Mining Co. v. Drake*, 26 Kas. 345.) In this case, however, the statute made provision for the payment of damages in conformity to the general road law. Under the general road law of 1868, before a highway could be laid out and opened it was necessary that three viewers should be appointed, whose duty it was to determine whether the road prayed for was necessary, taking into consideration its utility, convenience and practicability, and also the expense that would result if the road should be opened. It was also the duty of the said viewers to assess and determine the amount of damages sustained by any person through whose land the road might run. This section line was declared a public highway by law, and the question of practicability and utility of the road was determined in advance by the statute, but the question of damages to the land-owners was a matter still to be determined; and construing § 2, chapter 89, General Statutes of 1868, so as to give it some force and meaning, we hold that it was necessary to have appointed viewers to ascertain the damages sustained by the owners of the land through which the road should pass, and until that was done, under the testimony in this case, the plaintiff had a right to treat the order opening this road as a nullity. When property is taken by the state or a county, a municipal subdivision thereof, a proper tribunal must be constituted, before whom the party may make his claim for damages. It is not necessary in a case where the state, or a municipal corporation acting by authority of the state, takes private property, that compensation shall be first paid; it is sufficient if provision is made for its payment, and an impartial tribunal constituted before whom

26—42 KAS.

the owner of the land can go to claim and receive his damages without delay. (Cooley, Const. Lim. 560, 561; *The State v. Messenger*, 27 Minn. 119.)

The owner of the land in this case had no notice of the opening of the road and the taking of her land, except what may have been given by the road record. No tribunal was constituted before which she could present her claim for damages. The law provided how the road might have been opened, and directed the manner in which an opportunity might have been given for claiming damages for the land taken. It was not complied with, nor even attempted to be.

We think without these preliminary steps being taken the county board had no power to grant the road, and its order was void.

Therefore we recommend that the judgment be reversed.

By the Court: It is so ordered.

HORTON, C. J., and VALENTINE, J., concurring.

JOHNSTON, J. : The highway having been located and established by the legislature, the only question remaining to be settled was the amount of compensation due to the owners of the land over which the road was laid. As stated in the prevailing opinion, prepared by Commissioner HOLT, private property may be taken by the state for a highway without first paying the compensation. It is necessary that suitable provision should be made by law for obtaining compensation, and to that end there must be an impartial tribunal provided which is convenient and free of access to any owner, where he can have a hearing and obtain an allowance for the property appropriated. (Cooley, Const. Lim., §§ 560, 561; *The State v. Messenger*, 27 Minn. 119.) In my opinion such a tribunal has been provided in this case. The provisions of the general road law are to govern in cases like this, so far as they are applicable. By that law the board of county commissioners is given authority to determine the amount of compensation for the land appropriated for the road, and to make an allowance therefor. It is the tribunal which is invested with general

jurisdiction for the allowance of all claims and accounts which have become a charge against the county.    It is open and free of access to every one having a claim, and was to the owners of lands appropriated in this case.