### J. L. CAMPBELL ET AL. V. JOHN MORAN ET AL.

FILED APRIL 21, 1904. No. 13,353.

Liquor License: PETITION: FREEHOLDER. A wife, living with her husband on land, the title to which is in the latter and which is occupied by them jointly as a family homestead, is not, by reason thereof, a freeholder within the meaning of section 25, chapter 50, Compiled Statutes, regulating the sale of intoxicating liquors. The same is true as to a husband, living with his wife on land, occupied by them jointly as a homestead, the legal title to which is in her.

ERROR to the district court for Clay county: GEORGE W. STUBBS, JUDGE. *Reversed.*

*Kirkpatrick & Hager,* for plaintiffs in error.

*Leslie G. Hurd, Paul E. Boslaugh* and *John A. Moore,* contra.

HOLCOMB, C. J.

The present controversy is with respect to an order of the authorities of the village of Clay Center granting a license to the defendants in error to sell intoxicating liquors. The district court having on appeal affirmed the order of the village board, the cause is brought here for review by proceedings in error. It is argued that the order granting the license is irregular and erroneous because no sufficient petition was presented to the village trustees as required by the law regulating the sale of intoxicating liquors. Among those who signed the petition are the names of several whose qualifications to sign a petition for a license are disputed. Whether such persons

are qualified petitioners depends upon their being free-holders within the meaning of the law. Their interests are limited to a mere homestead right or privilege in lands, occupied as a family homestead, the legal title to which they do not hold, but which is in the wife or husband of such petitioner. If a person having only such homestead right or interest in real estate is not a "resident free-holder" within the meaning of the statute, then the petition in the case at bar is insufficient, and the order thereon, granting a license by the board of trustees and by the district court on appeal, is erroneous, and the judgment will have to be reversed. Section 25, chapter 50, Compiled Statutes (Annotated Statutes, 7175), provides that village authorities may grant a license to sell intoxicating liquors, when a petition therefor shall be signed by 30 of the resident freeholders, or, if there be less than sixty, a majority of the freeholders of the ward or village where the sale of such liquors is to take place. Of course, the legislature, in fixing the qualifications of petitioners for a liquor license, used the term "resident freeholder" as it is ordinarily and commonly understood in legal terminology, where the words have a well recognized and generally accepted meaning. The fact that a qualified petitioner is required to be a resident freeholder is, of itself, evidence that, in the regulation of the traffic, the legislature intended those only should be permitted to act who had attained the status, standing and dignity attributable to those who are owners of property of the stable character of real estate. The test is not only a property qualification, but the person must have title to and interest in the particular kind of property designated. The phrase "resident freeholder" in this connection should be given neither a narrower nor a broader meaning than that which should be given wherever found in the statute, where such requirement is made the basis of the qualification of a person when acting in regard to any designated matter. If the husband who lives with his wife on a homestead, the legal title of which is in her, is a freeholder within the

meaning of the liquor law, then he is a freeholder for all other purposes, where the statute, in general terms, makes that a test of qualification.

In order to determine the question here presented, it is necessary to inquire, first, what is a freeholder; and, second, is the homestead right or interest of the spouse, not owning the legal title, a freehold estate within the meaning of the word as recognized and defined by the authorities? Blackstone defines a freeholder as one having such an estate in lands as is conveyed by livery of seizin, and may be in fee simple or conditional fee, and may be for life only. 2 Blackstone, Commentaries, 104. In Winfield, Adjudged Words and Phrases, 277, it is said: "A freeholder is one who holds lands in fee, or for life, or for some indeterminate period." It is also defined as "An estate of inheritance or for life in real property." 8 Am. & Eng. Ency. Law (1st ed.), 898. From the definitions given, it will readily be seen that, in order to be a freeholder, a person must have a property right in and title to real estate, amounting to an estate of inheritance, or for life, or for an indeterminate period. What is required is title to the property, and not simply a contingent or an expectant estate, nor a right of occupancy or a privilege, with power to prevent alienation or incumbrance by the holder of the legal title. While this court has, in construing the law relative to the right of homestead, in all instances, given a most liberal construction for the protection of the homestead claimants and the conservation of the homestead, it has never gone so far, in any of its decisions, as to say that the selection of the homestead by a husband and wife from the separate property of either effected a change of title, or created in the one not holding the legal title a new property interest in the land thus selected as a homestead. The homestead right or privilege granted by statute, before it has ripened into a life estate by the death of the spouse holding the legal title, is a quality of exemption and freedom of the property embraced in the homestead from execution and forced

sale, incumbrance or alienation, without the consent of both husband and wife. The right of homestead, this court has frequently said, is a personal privilege, which may be waived or lost, unless asserted in due time on all proper occasions. *Brownell & Co. v. Stoddard,* 42 Neb. 177; *Schields v. Horbach,* 49 Neb. 262, 271. In Waples, Homestead and Exemption, p. 121, it is said:

"The husband conveys no land to his wife by declaring homestead; he lets her in to equal control as to alienation, and equal right to enjoyment, and to that protection which the law gives to all homestead holders. But when the state's purpose, relative to homestead conservation, has been accomplished, the land title is as before." At page 103 it is said: "There is no conveyance of land or land title in the dedication, allotment or setting apart of the homestead." Again says the author, at page 102: "The state bestows no homestead property on anybody. It interferes with no man's title. It protects what he already owns, under conditions and with limitations. * * * The homestead right has been called an incumbrance upon land. * * * So it is held that, by the carving of the homestead out of land, the incumbrance is thus put upon it, but the title remains as before."

This view as to the effect of the dedication of land as a homestead must, we think, be the true one. There is nothing in the statute, providing for the selection and exemption of a homestead, that operates to transfer the title to all or any part of the real property. Its effect is to withdraw the land, thus selected, from forced sale, and prevent alienation without the consent of both spouses. The statute, as its title indicates, treats the subject as one of exemption, rather than the creation of any new estate in the property in the spouse not holding the legal title. It is true that section 17, chapter 36, Compiled Statutes (Annotated Statutes, 6216), provides that, upon the death of the holder of the legal title to the homestead, the surviving spouse shall be vested with a life estate therein, and this estate, when it becomes vested, doubtless makes

the surviving homestead claimant a freeholder within the ordinary meaning and acceptation of that term; but there is nothing in the section referred to inconsistent with the view, that the full legal title and estate in the homestead property are in the one who holds the fee, prior to death. The manifest purpose of the provisions of section 17, *supra*, is to preserve to both spouses the full benefit of the homestead right, during the whole of the lives of each of those for whose protection the statute was intended. The right or interest of the wife or husband, in the homestead, not holding legal title is quite analogous to the right of dower or the estate by curtesy, both of which are simply contingent and inchoate till, by the death of the owner of the fee, they become vested estates; and all current authority is to the effect that the estate by the curtesy initiate, or the inchoate right of dower, is not a freehold estate, nor have they any of the attributes of a freehold, nor do they become such till death of the husband or wife owning the fee. After the death of the owner of the fee, the estate by curtesy and the right of dower become vested and, as in the case of the death of the fee owner of the homestead, a freehold estate arises in favor of the survivor. In *Holbrook v. Wightman*, 31 Minn. 168, it is said by that court, in speaking of the homestead right:

"We think, therefore, that the plainer and less artificial construction of the language is that the survivor takes a life estate in the homestead premises analogous to that of dower, and we believe this to be the construction which is generally placed upon it by those charged with the duty of executing the law." Citing Potter's Dwarris, Statutes and Constitutions, 179, note; *Edward's Lessee v. Darby*, 12 Wheat. (U. S.) 206.

In *Johnston v. Bush*, 49 Cal. 198, it is held that the dedication of land as a homestead under the homestead laws of that state did not, in any wise, change the title of the property thus dedicated, and that title remained in either the husband or wife, or as the common property of both, as it was before its selection as such homestead.

To the same effect is *Gee v. Moore,* 14 Cal. 472. In *Brame v. Craig,* 12 Ky. 404, it is held that the homestead exemption is not an estate in the land, but only a privilege of occupying the same by a housekeeper with his family as against his creditors. This court has once said, in a cause here on appeal from a confirmation of sale in foreclosure proceedings, that a husband is a freeholder who lives with his wife upon land of which she has the title, when occupied as a homestead. *Salisbury v. Murphy,* 63 Neb. 415. This decision gives warrant for the contention of the defendants in error, to the effect that the petitioners in the case at bar, to whom objections are made, were qualified signers as resident freeholders. The court's utterance, in the case cited, is the only expression heretofore made, which seemingly recognizes a person so situated as being a freeholder within the meaning of that term. The opinion, on its face, discloses that the subject was not exhaustively argued nor thoroughly considered. The case was disposed of almost entirely by the application of the doctrine of *stare decisis.* The decision follows, or purports to follow, *Cummings v. Hyatt,* 54 Neb. 35, and *Hughes v. Milligan,* 42 Kan. 396, 22 Pac. 313. An examination of *Cummings v. Hyatt* discloses that this question was not decided in that case, and that the court, in specific terms, found it unnecessary, and declined to pass upon the point in that controversy. It is said in that opinion, at page 39:

"In relation to the signer of the petition, who was a minor at the time, and the one a man who was occupying property with his wife, which was owned by her and which was their homestead, we are not called upon to discuss or decide whether the trial court was correct or otherwise in its holding that the minor and the man referred to were freeholders within the meaning of the statute, for the reason that the record discloses that there were 2 of the signers of the petition as to whom the parties stipulated that they knew nothing in regard to whether they were freeholders or not. * * * The petitioner based his right to an injunction, in part, on the assertion that 50 freeholders

had not signed the petition, and it devolved on him to prove his assertions, and any of the signers as to whom there was no testimony offered must be presumed to have been freeholders; they being counted, gives the requisite number 50, without an examination of the question of the minor's qualification or that of the man who was occupying as a homestead land owned by his wife."

It is thus made clear that the court was in error in the *Salisbury* case, in saying that the question there for consideration had already been determined in the case of *Cummings v. Hyatt.* In the case of *Hughes v. Milligan, supra,* in which was raised the question of the qualification of signers to a road petition, it is said by the court:

"By the common law the estate of dower was a freehold estate; and also the estate by the curtesy; and although in the latter the title of the land was in the wife, yet upon the birth of a child the husband was called tenant by the curtsey initiate." Say that court, "The interest that the husband has in the homestead of the wife is a different estate from that by curtesy initiate, but in some respects at least it is analogous."

It is quite evident that, in speaking of the right of dower, and of the right of tenant by curtesy under the common law, as being a freehold estate, the court had reference, not to the inchoate right of dower, or the right as tenant by curtesy initiate, but to the estate which became vested upon the death of the owner of the fee. It is contrary to the trend of all the authorities to hold that, under the common law, the inchoate right of dower, or the right of tenant by curtesy, as existing during the life of the owner of the fee, rises to the dignity of a freehold estate, and this, certainly, has not been the view held to in this jurisdiction since the foundation of the state's jurisprudence. It would seem, therefore, that correct reasoning would lead to a contrary conclusion from that announced by the supreme court of Kansas in the case heretofore cited. If the analogy be proper, then it is obvious that the homestead right of the husband or of the wife to land occupied as a home-

stead, the legal title to which is held by the other spouse, can not be anything more than an inchoate right similar to that of dower or curtesy initiate, in so far as any title in the land is concerned, and that no vested title or freehold estate arises in favor of the survivor till the death of the owner of the fee. It must follow from what has been said that the homestead right or privilege of the husband or of the wife in land occupied as a homestead, the title to which is in the other, is not a "freehold estate" within the ordinary and generally accepted meaning of the word; and that the petition in the case at bar, for such reason, not having the signatures of the required number of resident freeholders, renders the granting of a license erroneous, and calls for a reversal of the judgment of the district court affirming the action of the village board of trustees granting such license. The judgment is reversed and the cause remanded.

REVERSED.