PHIL H. COHN, APPELLEE, V. CHRIS WELLIVER ET AL., APPELLANTS.

FILED APRIL 24, 1909.        No. 15,978.

1. **Intoxicating Liquors:** APPLICATION FOR LICENSE. "Under the liquor laws of this state (Ann. St., ch. 32), a petition for a liquor license must be signed by *bona fide* freeholders." *Dye v. Raser*, 79 Neb. 149.

2. ——: ——: FREEHOLDER. "One made a freeholder for the sole purpose of qualifying him as a petitioner for a liquor license is not a *bona fide* freeholder within the meaning of the liquor law." *Dye v. Raser*, 79 Neb. 149.

3. ——: ——: ——. In order to be a freeholder to enable one to sign a petition for a license to sell malt, spirituous and vinous liquors, the "person must have a property right in and title to real estate, amounting to an estate of inheritance, or for life, or for an indeterminate period. What is required is title to the property, and not simply a contingent or an expectant estate, nor a right of occupancy or a privilege, with power to prevent alienation or incumbrance by the holder of the legal title." HOL-COMB, C. J., in *Campbell v. Moran*, 71 Neb. 615. Therefore a person holding an executory contract giving the right to purchase land upon a strict compliance with the terms of the contract in the future is not a freeholder.

APPEAL from the district court for Dawson county: BRUNO O. HOSTETLER, JUDGE. *Reversed with directions.*

*E. A. Cook,* for appellants.

*Frank E. Beeman* and *F. G. Hamer, contra.*

REESE, C. J.

This was an application to the village board of the village of Eddyville for a license to sell intoxicating liquors within said village. A remonstrance was filed by citizens of the village and county, presenting a number of issues, among which was a denial that the petition was signed by the requisite number of freeholders. The application was heard by the board, and the license granted as prayed. The remonstrants appealed to the district court, where the action of the board was sustained, and the license ordered to be issued. They appeal to this court.

The principal question presented is whether the signers of the petition were freeholders, as is required by section 25, ch. 50, Comp. St. 1907. There were 30 petitioners. There is some dispute as to the number of resident freeholders in the village. By the applicant it is claimed that there are less than 60 in number, and by the remonstrants that there are more. By the provision of the statute above referred to, if less than that number, the petition must be signed by a majority; if more, by not less than 30. One witness testified that there were but 51; but it was

claimed that he omitted some who should have been counted. If his enumeration was correct, a petition would be sufficient if signed by 26. It appears from his testimony that in making the count he did not include 11 of the names signed to the petition. If those persons were freeholders, they should have been counted, which would increase the number to 62; if not, they were not competent signers of the petition. If there were 62 freeholders, the law requires that the petition be signed by 30. There were 4 persons who signed the petition who, it is claimed, were not freeholders. If we deduct their names from the 11 above referred to, it would leave 7 to be added to the 51, making 58 freeholders, a majority of which would be 30.

The inquiry then is as to the competency of Carl Baker, E. R. Comstock, Thomas Moore and A. M. Smith as signers of the petition. Neither of them held any real estate in the village except by executory contracts for vacant lots, and one of whom, Thomas Moore, testified frankly that he procured his contract in order that he might sign applicant's petition. This fact alone, it being shown that the contract was procured for that sole purpose, disqualified and must exclude him. He stated that he was 21 years of age, and that his contract was made to him by his father for half a lot about one week before he signed the petition, and was for the purpose named. In *Dye v. Raser*, 79 Neb. 149, we held that "one made a freeholder (in that case by deed) for the sole purpose of qualifying him as a petitioner for a liquor license is not a *bona fide* freeholder within the meaning of the liquor law." The proof showing that the four held lots in the village only by contract raises the question as to whether they are freeholders under the provisions of the liquor laws of the state. The importance of this inquiry is made manifest when we remember that a compliance with the law in this respect is jurisdictional and that, "whatever the requirement of the act may be, it must be fully complied with. Without the consent or indorsement of at least the mini-

mum number of qualified persons, there is no jurisdiction
to grant the license. A license issued without this
sanction is void." Black, Intoxicating Liquors, sec. 161.
"The signers to a recommendation of a petition for license
must be such as the statute requires — adults, freeholders,
taxpayers, residents of the district, citizens, or otherwise,
according to the terms of the law. Any attempt to evade
the law in this respect, or to practice a fraud upon it, will
be discountenanced by the courts. Thus, a deed of lands
made to a large number of persons for a single considera-
tion, and merely for the purpose of qualifying them to
sign recommendations for licenses, is fraudulent, and will
not constitute them 'reputable freeholders' within the stat-
ute." Black, Intoxicating Liquors, sec. 160.

One phase of the question here presented was before
this court in *Campbell v. Moran*, 71 Neb. 615, and, after
a somewhat exhaustive discussion, the court, speaking
through Chief Justice HOLCOMB, say: "From the defini-
tions given, it will readily be seen that, in order to be a
freeholder, a person must have a property right in and
title to real estate, amounting to an estate of inheritance,
or for life, or for an indeterminate period. What is re-
quired is title to the property, and not simply a contingent
or an expectant estate, nor a right of occupancy or a privi-
lege, with power to prevent alienation or incumbrance by
the holder of the legal title." It is shown by the record
that about two months before the hearing the Union Land
Company agreed to sell Allen M. Smith and Carl Baker
two lots in Eddyville for $70, and that $23.33 was paid
on the purchase price, the other payments to become due
in one, two, and three years thereafter, the contract pro-
viding that time and punctuality of payment were the
essence of the agreement, and in case of failure the con-
tract to be forfeited. It was further stipulated that, "in
consideration of the stipulations herein contained and the
payments to be made as hereinafter specified, the party
of the first part agrees to sell unto the party of the second
part" the real estate, describing it. As this was only an

agreement to sell upon a strict compliance with the terms and payments stipulated in the contract, and no effort was made to vest any title in the purchasers, nor give them any right to claim such title until the terms of the contract were fully met, we are unable to see that they meet the requirements of the statute under the decision above referred to.

E. R. Comstock testified that he had a contract for an interest in a lot in connection with his father, but that he could not give the number of the lot. He testified that the contract was in writing, but it was not introduced in evidence. He had no deed.

The terms "freehold" and "freeholder" have received a great many definitions, but practically all agree with the definition by Chief Justice HOLCOMB. See 20 Cyc. 843; Winfield, Adjudged Words and Phrases, 277; 3 Words and Phrases, 2968. It is true that in some cases parties holding under contracts of purchase are held to be freeholders, either legal or equitable, and that rule, if applied here, would require a different decision as to the signers named. Among the cases thus holding is *Hannah v. Shepherd,* 25 S. W. (Tex. Civ. App.) 137, but no authorities are cited in support of the decision. The holdings in this state are not in entire harmony as to the meaning of the term as used in different statutes, but we are not aware of any decision to the effect that persons having less than a freehold title to land are competent signers of a petition for a liquor license. It was evidently the purpose of the legislature in enacting the law under consideration to place the matter of the issuance of licenses primarily in the hands of those having their own homes and interests within the municipality or ward where the license was to be sought; hence, the use of the words "resident freeholders," which must be construed to mean those living within the subdivision holding title to real estate. We therefore hold that the parties named did not come within the statutory requirement, and that they were not competent signers of the petition, and that the license should have been refused.

A number of other questions were argued at the bar of this court and discussed in the briefs, some of which have been heretofore decided, but it is not deemed necessary to notice any of them.

The judgment of the district court is reversed, with directions to reverse the decision of the village board and require that the license be canceled.

JUDGMENT ACCORDINGLY.