17250

GEORGE A. HARLEY *et al.*, Appellants, v. CITY OF SPARTAN-BURG *et al.*, Respondents
(96 S. E. (2d) 828)

*Messrs. Harry E. DePass, Jr., Simpson Hyatt* and *George S. DePass,* of Spartanburg, *for Appellants,*

480

*Messrs. R. B. Paslay, Sr.,* and *T. E. Walsh,* of Spartan-
burg, *for Respondents,*

*Messrs. Harry E. DePass, Jr., Simpson Hyatt* and *George S. DePass,* of Spartanburg, *for Appellants,*

January 28, 1957.

OXNER, Justice.

This case involves the validity of certain proceedings wherein it was sought to annex to the City of Spartanburg an adjacent area known as Duncan Park.

Pursuant to the procedure prescribed in Title 47, Chapter I, Article 2 of the 1952 Code, relating to the extension of the corporate limits of cities and towns, a petition was filed by certain freeholders in the area proposed to be annexed, the boundaries of which were adequately described, asking that said territory be annexed to the City of Spartanburg. The petition was considered at a meeting of the City Council held on April 4, 1955. After hearing the testimony of Mrs. Ernie White, a clerk who had spent several months compiling a list of the freeholders in Duncan Park and checking same against the petition filed, and the testimony of one of the residents of Duncan Park who had also spent considerable time working on the list of freeholders, the Council found that the petition was signed by a majority of the freeholders in the area proposed to be annexed. A resolution certifying that fact to the County Commissioners of Elections was then adopted.

By direction of said Commissioners, an election was held on May 10, 1955, with the following result: In the City of

Spartanburg the vote was 1625 in favor of and 98 against annexation, and in the area proposed to be annexed 354 voted in favor of and 321 against annexation. At a meeting of the City Council held on June 30, 1955, a resolution was adopted declaring the Duncan Park area a part of the City of Spartanburg.

This action was brought on July 16, 1955, by certain residents and freeholders of the Duncan Park area, on behalf of themselves and all others similarly situated, for the purpose of having the annexation declared invalid and enjoining the City and its officials from exercising authority or control over the said area. It was alleged in the complaint that the members of the City Council undertook to determine whether a majority of the freeholders had signed the petition for annexation "when they knew or should have known that they had never compiled a correct list or determined the number of freeholders in the said area", that the finding of the City Council "was based on mistake, ignorance and lack of proper investigation"; and that the petition had not been signed by a majority of the freeholders in the area proposed to be annexed.

The defendants demurred to the complaint. This demurrer was overruled in an order filed on August 17, 1955, and the case referred to the Master of Spartanburg County to take the testimony and report to the court his findings of fact and conclusions of law. Extended references were held by the Master in September, 1955. On December 20, 1955, he filed an excellent report in which he found that the petition presented to the City Council was signed by a majority of the freeholders in the area proposed to be annexed and that the annexation was valid. On exceptions by plaintiffs to this report, the case was heard by the presiding Judge of the Seventh Circuit in January, 1956. An order was filed by him on February 29, 1956, sustaining the report of the Master and dismissing the action. From this order, the plaintiffs have appealed.

We find it unnecessary, as did the Master and Circuit Judge, to pass upon the question as to whether the finding of the City Council that a majority of the freeholders in Duncan Park had signed the petition for annexation is conclusive. As a sustaining ground, respondents urge that such a finding is conclusive in the absence of abuse of discretion or fraud, neither of which they say is charged in the complaint. We shall assume that appellants were at liberty to show that the certificate made by the City Council to the County Commissioners of Elections was erroneous.

The first attack made upon the annexation proceedings is that the City Council failed to determine the total number of freeholders in the area proposed to be annexed and the exact number who had signed the petition. It is argued that Council should have "tabulated and counted" and also specifically set out in its minutes the total number of freeholders and the number who had signed the petition. Appellants say that the finding made in the resolution adopted by Council is a general conclusion and insufficient.

The statute, Section 47-14 of the 1952 Code, imposes the duty upon the city or town council to determine whether the petition "has been signed by a majority of the freeholders within the territory proposed to be annexed." It does not undertake to specify the method to be used in making such determination. Much is necessarily left to the discretion of the council. 29 C. J. S., Election, § 70, p. 94. We think the City Council of Spartanburg did all that was reasonably possible to correctly ascertain the number of freeholders in the Duncan Park area. A clerk in the office of the Council worked diligently several months on this undertaking. She carefully examined the records in the offices of the auditor, the register of mesne conveyance and the probate judge and in addition spent considerable time on the ground making inquiries. She was also assisted by a number of residents familiar with the property owners in the area. After the list of freeholders was compiled, it was carefully compared with the names signed to the petition. After hear-

ing the testimony, Council concluded that a majority of the freeholders had signed the petition. This conclusion necessarily involved a determination of the total number of freeholders and the number who had signed the petition. We know of no rule requiring that the totals be inserted in the minutes or in the certificate made to the commissioners of election, although it might be a good practice to do so.

We now reach the principal question in the case, namely, whether the petition for annexation was in fact signed by a majority of the freeholders in the area proposed to be annexed. Testimony upon this question consumed six full days before the Master, during which disputes arose as to whether certain lots were within or without the area and as to the ownership of various lots at the time the petition was filed. In several instances during the reference names were added, later removed and finally restored. There was also quite a disagreement as to the proper definition of a freeholder. Appellants contended that this term included remaindermen, those owning equitable estates and those having easements across some of the lots. Numerous deeds, trust instruments and wills were introduced in evidence which the court was asked to construe. There was also some discussion as to whether those owning tax exempt property should be included. The calculations made by the respective parties as to the total number of freeholders and those signing the petition would change almost from day to day.

Counsel for appellants themselves seem to have had great difficulty in determining the total number of freeholders in the area proposed to be annexed. Their calculations have varied from time to time since the commencement of the action. In their complaint they alleged that they had made a "thorough" check and were informed and believed that there were "792 or more freeholders owning property within the area sought to be annexed." In Exception 35 to the report of the Master they said that he should have found that there was a total of 752 freeholders. In exception 22 on this appeal they say "that according to the law and the evidence in the

case there are a total of 743 freeholders." In their brief they list a total of 736 freeholders.

There is a similar conflict in their positions at various times as to the number of freeholders who signed the petition. The Master found that the petition was signed by 368 freeholders. Exception 12 to the report of the Master is as follows: "The Master erred in holding and finding that there were 368 valid freeholders that signed the petition for the annexation of the Duncan Park area, the error being that there were only 364 valid signers." Exception 23 on this appeal reads: "The Court erred in sustaining the Master's report that there are 368 valid freeholders on the petition presented to city council, the error being that there are only 358 names left unstricken on the petition." Exception 39 on this appeal is as follows: "The Court erred in holding that there are 368 valid freeholders on the petition, the error being that there are only 343 valid freeholders on the petition presented to city council." Appellants say in their brief that there were only 355 valid signatures on the petition.

On this appeal it must be assumed that the petition for annexation contained the names of at least 364 freeholders. A concession by appellants to this effect in the Circuit Court is implicit in Exception 12 to the report of the Master. The Circuit Judge was, therefore, not required to examine the record for the purpose of determining whether less than 364 freeholders signed the petition, and appellants will not be permitted here to assert that there were fewer than that number. It is well settled that we cannot consider on appeal issues not presented to the Court below.

It follows that the burden is on appellants to show that there were at least 728 freeholders in the area proposed to be annexed. They set out in their brief the names of 736 persons who they claim constitute the freeholders within the Duncan Park area. This would certainly seem to be the present extent of their claim. After carefully considering the

names on this list, we find that the following are not free-holders and must be excluded:

John Mason Carlisle and his wife Nancy Caldwell Carlisle

It appears that the Carlisles orally agreed to purchase a lot from one Milton Smith provided they could obtain a loan through the F. H. A. John Mason Carlisle testified that the deed was delivered to him on March 27, 1955, for the purpose of enabling him "to start processing my loan through the F. H. A." However, the purchase price was not paid and the deed was not recorded until April 26, 1955, or approximately 22 days after City Council acted on the petition. It is obvious from the testimony that the delivery of the deed on March 27th was a mere conditional one and was not to be effective unless the F. H. A. loan was approved and that the Carlisles did not become freeholders until April 26th. They were properly excluded by the Master. It is true that the Master stated during the reference that the Carlisles were conceded to be freeholders but later this was corrected and he expressly stated that respondents had made no such admission. It should be further stated that the name of Milton Smith had previously been included in the list of those who were agreed upon as property owners within the area.

Dollie Taylor

Under the trust set up by the will of H. Z. Taylor, Sr., his two daughters Ruby Fay Taylor and Dollie Taylor, were to receive an undivided one-half interest in fee simple to certain lots upon attaining the age of 21 but in the event they died before reaching this age, their interest was to go to others. In the Master's report it is stated: "The plaintiffs concede that one of these children is still a minor and should not be included as a freeholders. They contend, however, that Ruby Fay Taylor, who has reached the age of 21 years, is a freeholder." While there is an exception to the effect that the Master erred in holding that Dollie Taylor was not a freeholder, there is no exception to the statement of the Master that appellants conceded before him that she should

not be included as a freeholder. It follows that she must be excluded.

## L. C. Dillard, Sr.

Mrs. White testified that Dillard's property was not within the Duncan Park area. At one point in the reference one of appellants' counsel admitted "that L. C. Dillard, Jr. and Sr. go off." At another point he stated, "L. C. Dillard, Jr. goes off, but L. C. Dillard, Sr. is regarded as a freeholder." The Master concluded that appellants had failed to show that the property of L. C. Dillard, Sr. was within the area proposed to be annexed and excluded him. This conclusion is abundantly sustained by the testimony.

## Billy S. Davis

On December 20, 1954, Davis agreed to buy from B. R. Cooley and his wife, Lucille Cooley, a house and lot for $8,200, making a down payment of $100. His agreement to purchase was conditioned, however, upon his being able to obtain a G. I. loan for $8,200 on the property. In the event he was unable to do so, the $100 was to be returned and the contract cancelled. It was not until April 13, 1955, or nine days after Council acted on the petition, that the sale was completed and deed delivered to the purchaser and recorded. Appellants have included all three of these parties on their list of freeholders on the theory that when Council acted on the petition on April 4, 1955, the Cooleys held the legal title and Davis the equitable title. But we think it is clear that all three cannot be counted. The most favorable view from appellants' standpoint would be to include the Cooleys, who would count as two, and exclude Davis. We think this should be done. Davis' obligation to purchase was wholly contingent. If he did not get the contemplated loan, his deposit of $100 was to be returned. Nor do we think that a vendee in an executory contract of sale who has made only a partial payment should be counted as a freeholder. While he may have an equitable interest in the property, *Singleton v. Cuttino*, 107 S. C. 465, 92 S. E.

1046, *Epps v. McCallum Realty Co.,* 139 S. C. 481, 138 S. E. 297, his rights, as pointed out in *Good v. Jarrard,* 93 S. C. 229, 76 S. E. 698, 43 L. R. A. (N. S.), 383, are conditioned on his compliance with the terms of his contract. The equitable estate may never ripen into a legal estate and the legal estate may never pass from the vendor.

The term "freeholder" has received many definitions, *Campbell v. Moran,* 71 Neb. 615, 99 N. W. 498; *Payne v. Fiscal Court of Carlisle County,* 200 Ky. 41, 252 S. W. 127; *Gill v. Board of Commissioners of Wake County,* 160 N. C. 176, 76 S. E. 203, 43 L. R. A. (N. S.), 293; 37 C. J. S., p. 1373. It is apparent from the cases reviewed in Ann. Cas., Vol. 29, 1913D, commencing on page 327, that the decisions on the question who is a freeholder cannot be reconciled. This diversity of opinion extends to the question as to whether a vendee in an executory contract of sale may be considered a freeholder. An excellent discussion of this phase of the subject will be found in the leading and dissenting opinions in *State ex rel. Dillman v. Weide,* 29 S. D. 109, 135 N. W. 696.

We need not determine in the instant case exactly what character of estate is necessary to constitute one a freeholder. Much would depend on the intention of the Legislature in the particular statute involved. Nor do we undertake to determine whether generally the owner of an equitable estate may be considered a freeholder. It is sufficient to say that under the statute here involved the holder of an executory contract to purchase land should not be considered a freeholder. We think the better reasoned cases sustain this view. *People v. Hynds,* 30 N. Y. 470; *In re Cohn,* 84 Neb. 230, 121 N. W. 107; *Daniels v. Fossas,* 152 Wash. 516, 278 P. 412.

### Duke Power Company

Appellants claim that Duke Power Company has an easement over some of the lots and should be included. We need not determine whether an easement of this kind constitutes a freehold estate. The Master stated in his report:

"With respect to Duke Power Company, two deed references were originally given, 18-A, 227 and 18-B, 206. However, neither of these references have anything to do with Duke Power Company. Later, after this reference was closed and when the matter was being argued before me, Plaintiffs' attorneys introduced on the Excluded Sheet, a reference to a right-of-way to Duke Power Company in Deed Book 7-R, page 514. However, no deed or a copy of a deed was introduced in evidence."

There is no exception to the ruling of the Master excluding this testimony, nor to his statement that the deed upon which appellants rely was not introduced in evidence. Under these circumstances, the Duke Power Company must be excluded.

### J. W. Layton and Mrs. David Layton Duncan

Appellants contend that these two parties are owners, as tenants in common, of certain property in the Duncan Park area. The Master found that this property was outside the area proposed to be annexed. The testimony sustains this conclusion. Counsel for appellants sought to prove this issue by hearsay evidence. The Court sustained an objection and counsel for appellants stated that they would get a witness later to prove that Layton and Mrs. Duncan were freeholders, but no such witness was ever produced.

### Harold A. Campbell, Elizabeth Z. Sloan, Louise L. Williams, Ann Campbell and Jack Campbell

These persons are children of Mr. and Mrs. W. A. Campbell. During the course of the reference it was agreed by all parties that Mr. and Mrs. Campbell should be counted as freeholders and they are listed in appellant's brief as Nos. 426 and 427. After the testimony was closed and the case set down for argument, appellants' counsel stated that he had recently learned that W. A. Campbell had died, leaving a will naming the children above men-

tioned among his devisees, and asked that the case be reopened so as to permit them to introduce the probate record pertaining to the estate of W. A. Campbell. The Master refused to do so, stating that Mr. and Mrs. Campbell had previously been agreed upon as constituting the freeholders representing this property and as the reference had been closed, he did not think it proper under all the circumstances to allow this additional testimony. We think the Campbell children must be excluded for two reasons. (1) There is no exception to the refusal of the Master to reopen the case and admit the probate record. (2) The question of whether the case should be reopened was addressed to the sound discretion of the Master. *City Council of Greenville v. Earle,* 80 S. C. 321, 60 S. E. 1117. We find no abuse of discretion.

We entertain considerable doubt as to whether certain other persons named on appellants' list are freeholders but it is unnecessary to pursue this list further. We have found that a total of 13 names must be stricken from the 736 listed in appellants' brief as constituting the freeholders in the area proposed to be annexed, which leaves the number of freeholders as 723. As previously pointed out, it must be assumed on this appeal that the petition for annexation was signed by 364 freeholders, which under the facts found are two more than necessary.

In concluding our discussion of this phase of the case, we desire to say that even if our calculation had shown that the petition was a little short of the required number, we would hesitate under the circumstances of this case to set aside the finding of the City Council, which is *prima facie* correct. *Rawl v. McCown,* 97 S. C. 1, 81 S. E. 958, 959. The possibility of a slight mistake on our part is too great. Probably no two persons would reach the identical result. As pointed out in the *Rawl case,* mathematical precision is improbable, if not impossible, in a case of this kind.

It is next contended by appellants that they were denied the right to be fully heard in argument. The case was argued before the Circuit Judge on January 18,

1956. Counsel for appellants asked that each side be allowed three hours in oral argument and two weeks in which to file a brief. The Court permitted only one hour to the side in oral argument with the right to file briefs within a week, which were to be exchanged, and each side allowed a further period of three days to reply to the brief of the other. These matters were addressed to the sound discretion of the Circuit Judge. There was clearly no abuse of discretion.

While the Court had the merits of the case under advisement, counsel for appellants moved on February 13th to recommit it to the Master to clarify and correct the record and to take further testimony as to the status of certain persons claimed to be freeholders. The Circuit Judge denied this motion. It was addressed to his discretion. *Halk v. Stoddard,* 62 S. C. 564, 40 S. E. 957; *Farmers Bank & Trust Co. v. Southern Granite Co.,* 96 S. C. 106, 79 S. E. 985. We think the motion was properly refused.

All exceptions are overruled and judgment affirmed.

STUKES, C. J., TAYLOR, J., and E. H. HENDERSON, Acting Associate Justice, concur.

LEGGE and MOSS, JJ., not participating.