The State, ex rel. Adams, v. The Mayor and Common Council of Kokomo.

No. 9279.

THE STATE, EX REL. ADAMS, v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF KOKOMO.

RAILROAD.—*Donation by City.*—*Resident Freeholders, How Enumerated.*—*Statute Construed.*—In ascertaining the number of resident freeholders so as to determine numerically whether a petition for a city to make a donation in city bonds, to aid in the construction of a railroad, is signed by a majority, as required by the statute, R. S. 1881, section 3153, all persons resident within the city, and owning a freehold interest in land, must be counted.

From the Madison Circuit Court.

*N. R. Linsday, M. Bell, M. McDowell, J. E. McDonald, J. M. Butler* and *A. L. Mason,* for appellant.

*J. O'Brien* and *J. W. Kern,* for appellee.

MITCHELL, J.—The Frankfort and Kokomo Railroad Company applied for a mandate to compel the mayor and common council of the city of Kokomo to pass an ordinance providing for the issue of bonds, so as to make a donation of $8,000 to aid in the construction of the appellant's railroad, in pursuance of an alleged petition in that behalf, by a majority of the resident freeholders of the city. The petition was in two paragraphs.

The first paragraph charged that a majority of the resident freeholders of the city, over the age of twenty-one years, had petitioned, and that the railroad company had performed all the conditions to be performed on its part necessary to entitle it to the donation, but that the common council had, notwithstanding the petition of the freeholders and the performance of the company, refused to make the donation.

The second paragraph was the same in substance as the first, except that it averred that a majority of the resident freeholders of the city, " not including infants, idiots, insane persons, and married women," had petitioned the common council to make the donation.

The case was here once before, and the facts will be found

more fully stated in the report of the former appeal. *Mayor, etc.*, v. *State, ex rel.*, 57 Ind. 152.

Section 3153, R. S. 1881, in force May 4th, 1869, reads as follows:

"Any city incorporated under the general laws of this State, upon petition of a majority of the resident freeholders of such city, may hereafter subscribe to the stock of any railroad, hydraulic company, or water power running into or through such city, or near the corporate limits of said city, or to make, on petition of the majority of the resident freeholders of such city, donations in money or the bonds of such city, to aid in the construction of any such railroad, hydraulic company, or water power, subject, however, to the limitations, direction, and restriction named in the provisos to the sixtieth section of the act entitled 'An act to repeal all general laws now in force for the incorporation of cities, prescribing their powers and rights, and the manner in which they shall exercise the same, and to regulate such other matters as properly pertain thereto,' approved March 14th, 1867."

The only question before us is as to the sufficiency of the petition.

It will be observed, the statute set out above provides that "on petition of the majority of the resident freeholders of such city," donations in money or the bonds of such city may be made, to aid in the construction of any railroad, etc.

The petition before us alleges in one paragraph, that a majority of the resident freeholders over the age of twenty-one years petitioned. In the other, that the petitioners constituted a majority of the resident freeholders, "not including infants, idiots, insane persons, and married women."

The court below sustained a demurrer to the application for a mandate, on the ground that the alleged petition was not in compliance with the statute.

The appellant seeks to demonstrate the impropriety of this ruling, upon the hypothesis that where the phrase "resident freeholders" or "disinterested freeholders" occurs, as it often

does in various statutes of the State, it is to be taken univer-
sally, and without exception, as meaning adult land-owners
competent in law to contract and be contracted with.

Statutes, some thirty or more in number, are referred to in
the briefs, in which the performance of certain duties, or the
exercise of certain powers, is required to be committed to
three or more residents, or disinterested freeholders, as the
case may be.

These statutes make provision for the appointment of
viewers or appraisers in partition, highway, condemnation,
drainage, and various other proceedings, and require the ap-
pointment of freeholders to examine and report to the court,
or other appointing body, in respect to the matters committed
to them.

The appellant's argument is, that persons who are under
legal disabilities are not freeholders within the contempla-
tion of these several statutes, and because not in these, it
must be supposed that such persons were not included in the
legislative intent in the statute which requires a majority of
the resident freeholders to petition, before the common coun-
cil of a city can acquire jurisdiction to make a donation to
a railroad or other public improvement.

Without undertaking to determine what other qualifica-
tions are required by resident or disinterested freeholders,
upon whom the powers and duties prescribed in the several
statutes referred to are conferred, we have no doubt that in as-
certaining the number of resident freeholders in a city, a ma-
jority of whom are required to petition, before its common
council can acquire jurisdiction to act upon the subject of
making a donation, all resident freeholders are to be counted.

The common council could not be compelled to act, except
upon the petition of a majority of the resident freeholders
of the city. Until such petition was presented, the council
had no jurisdiction to act. The term "resident freeholders"
must be understood in its ordinary meaning. When so un-
derstood and applied, it means all persons who reside within

the city, and who are the owners of an estate in lands within the city amounting to a freehold interest. *Damp* v. *Town of Dane*, 29 Wis. 419; *People* v. *Hynds*, 30 N. Y. 470.

We agree with all that has been said in respect to the rules for the construction of statutes, and especially that a construction which leads to absurd consequences must, if possible, be avoided. There is, however, in this case little room for construction, and absolutely no danger or opportunity for absurd consequences.

The Legislature prescribed the conditions upon which the jurisdiction of the common council should attach, in order that a city might impose a burden upon the property and make a donation in aid of a public work.

It was within the power of the Legislature to have fixed any arbitrary number as requisite to invoke the jurisdiction of the common council by petition. This number has been authoritatively fixed at a majority of the resident freeholders of the city. It is not for the courts to give this language such a construction as that it shall mean something different from what it plainly says. The construction contended for would require a reading of the statute so essentially different from that required by the language in which it is written, that we find ourselves unable to adopt the view so vigorously insisted upon in the appellant's behalf.

If we should concede that in the appointment of persons to make partition of real estate, or to act as appraisers, viewers, commissioners, etc., none but persons capable of contracting are eligible, it would not follow that, in ascertaining the whole number of resident freeholders in a given city, with a view of determining whether or not a majority had signed a petition, any resident freeholder, whether under legal disability or not, should be excluded.

There was no question of disability involved. The sole question was as to the number of resident freeholders within the city, and whether or not the petition presented was signed by a majority of the whole number.

Whether persons who were under legal disabilities at the time the petition was signed were competent petitioners, is in no way made a question, and is not decided. What we decide is, that in ascertaining the number of resident freeholders, so as to determine numerically whether the petition is signed by a majority, all persons resident within the city, and owning a freehold interest in land therein, must be counted.

The cases of *Osgood* v. *Breed*, 12 Mass. 525, *Wilbur* v. *Crane*, 13 Pick. 284, and *Turner* v. *Cook*, 36 Ind. 129, are, in our opinion, not analogous to the case under consideration.

The judgment is affirmed, with costs.

Filed Oct. 26, 1886.