STATE ex rel. DILLMAN, Respondent, v. WEIDE et al.,
Appellants.

(135 N. W. 696.)

1.  **Intoxicating Liquors—Local Option Elections—"Freeholder"—**
    **"Inheritable Estate."**

    Under Sess. Laws 1903, ch. 166, Sec. 1, concerning free-
    holder petitions in connection with liquor license elections,
    and Sec. 245, Civ. Code defining freehold estates, and Sec.
    2444, Civ. Code concerning interpretation of words and
    phrases, held, that the word "freeholder" used in said ch.
    166 means any person holding a life estate or an estate in
    real property inheritable as such property, whether it be a
    life estate or a fee simple, even though the class of persons
    who may take it be limited by the terms of the tenure or
    by inheritance laws.

2.  **"Equitable Estate"—Life Estate an Alienable Freehold—In-**
    **heritable Estate.**

    An equitable estate in realty is inheritable, which quality
    depends, not on the class of persons who may inherit but
    upon the inheritableness of the estate.  A life estate is in-
    heritable, and is a freehold, whether held for one's own or
    the life of another; Secs. 245, 246, Civ. Code.  It is an
    alienable freehold inheritable estate.  **Held,** a purchaser of
    a life estate acquires an alienable freehold estate, descend-
    ible to the heirs of his alienee, when the purchase contract
    in terms vests in him the equitable right to the life estate.

3.  **Conditional Estate—Future Interest—Option Contract—Ordinary**
    **Executory Estate—Equitable Inheritable Estate—Freehold.**

    Conceding that where by its terms a realty sale contract
    vests no interest until the happening of a future event or
    performance of condition subsequent, the vendee thereby
    acquires no legal or equitable estate until such event or
    condition happens or is performed, and that the same is true
    of an option contract involving realty, until the option is
    exercised; yet under an ordinary executory contract of sale
    of realty, where the purchaser pays part of the price, goes
    into possession, pays taxes, etc., and the vendor merely re-
    tains the legal title as trustee and as security for remainder
    of price, it vests in vendee an equitable inheritable estate:
    and, **held,** such vendee is a freeholder.

4.  **"Estate"—"Title"—Interest Conferring Use—Holders of Legal,**
    **and Equitable Titles.**

    The "estate" that one must hold in realty to render him
    a "freeholder" under the statute (ch. 166, Laws 1903)
    must be an interest conferring right to full and complete, or
    limited beneficial use of the realty; and, **held,** the pur-

chaser, under an ordinary executory contract of realty sale, who is in possession, is, as between him and the vendor, who retains the legal title as security for unpaid purchase price, the qualified petitioner under said statute. While "estate," as descriptive of rights of property, means the quantity of interest, from absolute ownership down to naked possession; and "title" is the means whereby the owner has just right to possession. Whiting and Corson, J. J., dissenting.

5. **Construction of Statute—Legislative Wisdom How Expressed.**
The court must construe the law as the legislative wisdom has seen fit to express it in language used in the act itself, and must not exclude from ch. 166, Laws 1903, persons competent as signers of petitions for a liquor license election who are therein designated as "legal freeholder voters," so as to include only those who were holders of fee-simple titles. Whiting and Corson, J. J., dissenting.

(Opinion filed, April 2. 1912.)

Appeal from Circuit Court, Grant County. Hon. C. X Seward, Judge.

Action by the State, on the relation of J. A. Dillman, to prohibit B. Weide and others, trustees of town of Revillo, from submitting the question of granting permits for sale of intoxicating liquors to voters at the general municipal election. From an order granting a peremptory writ of prohibition against further proceedings, entered upon sustaining a demurrer to defendants' answer, defendants appeal. Reversed and remanded.

*Thos. L. Bouck,* for Appellants.

Appellants contend that where a vendee holds lands in good faith under a contract of sale, has possession of the lands, has paid all taxes, and also made all payments required under his contract, he is a freeholder under the laws of this state.

Section 245, Revised Civil Code, 1903, defines a freehold estate as follows:

"Sec. 245: Estates of inheritance and for life are called estates of freehold."

Section 242, Revised Civil Code, 1903, is as follows:

"Sec. 242:. Every estate of inheritance is a fee, and every such estate, when not defeasible or conditional, is a fee simple or an absolute fee."

An inheritance is defined as follows:

"An inheritance in things real descending to the heir." 2 Bl. Comm. 201.

"Such an estate in lands or tenements or other things as may be inherited by the heir."

"An estate or property which a man has by descent, or heir to another, or which he may transmit to another as his heir."

Primarily, the term freeholder was used to distinguish between estates which descended to the heirs of a holder, and leasehold interests, which were denominated chattels real, and descended to the administrator. A freeholder was one who was entitled to the rents, profits and emoluments of the land he held without paying rents.

Under the provisions of our code and under the above definitions, it appears that Helgerson has an estate of inheritance in said lot and has a fee title thereto, which could only be defeated by failure on his part to perform his contract. The vendor has parted with her title to the lot and the authorities are, as we understand, quite unanimous in holding that while the naked legal title to lands sold under contract is in the vendor, that he simply holds the legal title and his interest in the lands is as trustee for the vendee. The reasonable and correct rule to apply in determining the interest of a vendor in lands sold under a contract, would be to ascertain whether in case of his death the lands so sold would be considered as an interest or estate in lands and descend to his heirs, or whether it would be considered personalty and descend to his administrator.

There are many well considered cases upon this subject, in the various states, and one of those is that of Clapp v. Tower, et al., 93 N. W. 862, also Bowen v. Lansing, et al., (Mich.) 57 L. R. A. 643; Woodward v. McCollum, (N. D.) 111 N. W. 624; 1 Warvelle on Vendors, Sd. Ed., page 223.

"An equity which is vested in the vendee is a proper subject of devise by him, and will descend to the heirs the same as realty. The same rights which were possessed by their ancestors will devolve on them, and they may have an enforcement of the

contract in their own favor." 1 Warvelle on Vendors, Sd. Ed., page 224.

"A trust estate, like a legal estate, is descendable, devisable, alienable and barrable by the act of the parties and by matter. of record." Croxall's Lessee v. Sherrerd, 72 U. S. 268, 18 L. Ed. 572.

Signers to a petition for an election who hold land under a contract, who have not paid for same in full, and who were not even in possession, were held to be legal freeholders where the statute required such petition to be signed by twenty freeholders Hannah v. Shepard, (Texas) 25 S. W. 137.

A vendee holding land under a contract where some of the installments were unpaid was held to be a freeholder duly qualified to serve as a grand juror. Com. v. Briucher, 2 R. O. B. (Virginia) 826.

*Geo. S. Rix,* for Respondent.

Under the terms of this purchase contract, Helgerson has to make the payments at stated times and perform other conditions of the contract in order to entitle him to a deed. If he fails in any of these conditions, he will not be entitled to the deed and will lose all his interest in the land purchased under the contract.

The facts as disclosed show nothing more than a conditional sale of the real estate dependent upon the several performances of certain conditions on the part of the purchaser. Such an interest creates nothing more than a contract right which may be realized or forfeited by the purchaser. His failure to perform forfeits all his rights. Such an interest to real estate is contingent and uncertain and does not constitute a freehold estate. It is true that under our statute and some others, the rights under such a contract extend to the heirs of the purchaser and that it may be enforced against the grantor after the death of the grantee by his heirs, provided the purchaser during his lifetime had fulfilled all of his obligations under the contract, but there is no vesting of a freehold estate until the contract is fulfilled and the heirs receive their deed.

Appellants refer to sections 242 and 245 of the Revised Civil Code which define an estate of inheritance and say that an estate of

inheritance and life are called estates of freehold.  The Code does not definitely define a freehold but states what sort of estates constitute a freehold.  We must look for the definitions of a freehold estate independent of the statute and distinguish when property becomes an estate of inheritance so as to become a freehold.

"An estate of freehold is one which is to endure for an uncertain period which must or at least may last during the life of some person."

"An estate of inheritance is an estate which may descend to heirs." (1 Washb. Real Prop. 51.)

"All freehold estates are estates of inheritance except estates for life."   Crabb Real Prop., Section 945.

"An estate in fee simple is that which a man has where lands are given to him and to his heirs, absolutely, without any end or limit put to his estate."   (1 Washb. Real Prop., 51; 2 Bl. Comm. 106.)

It will be seen from these definitions and the definitions given in section 242, that while an estate of inheritance is a freehold, yet it is an estate which carries with it the fee in the land which is absolute and unconditional and is not defeasible or dependent upon any condition or contingency.   Further as to what kind of a title will constitute a freeholder, we call the court's attention to case of Campbell et al. v. Moran et al., (99 N. W., page 498.); Marica v. Yost, (124 N. W. 460), and also the case of Dye v. Fraser et al., both being Nebraska cases, hold that a petition for the sale of intoxicating liquors must be signed by bona fide freeholders.   Kohn v. Sullivan et al., (Nebr. 121 N. W. 107.)

This court in the case of State of South Dakota ex rel. v. Toomey et al. where the question of what kind of an estate a signer must have to become a freeholder and entitled to sign a liquor petition, under Chapter 166 of the Laws of 1903, which chapter says that a petition asking for a vote to determine whether the sale of intoxicating liquors shall be licensed within a municipality, must be signed by twenty-five freeholder voters, says, "A voter whose wife is the owner of the homestead is, not a competent signer, for a freeholder is one who has title to the

property and not simply a contingent or expectant estate or a right of occupancy or a privilege with power to prevent alienation."

SMITH, J.  Appeal from the circuit court of Grant county. A petition was filed in the office of the clerk of the incorporated town of Revilla, purporting to be signed by 28 qualified voters, requesting the submission at the next general municipal election of the question of granting permits for the sale of intoxicating liquors within the municipality for the then ensuing year. This proceeding was instituted to prohibit the trustees and clerk from submitting said question to the voters as demanded in the petition, and alleging that said officers were without jurisdiction for the reason that the petition was not signed by 25 legal freeholder voters of the town, and that seven of the persons who signed said petition were not freeholders and therefore not qualified to sign said petition. An alternative writ of prohibition was issued, to which defendants made return and answer, admitting that 3 of the persons who had signed the petition were not freeholders, but denying the allegations of plaintiff as to the other 4 persons named, and alleging that the petition was signed by 25 legal freeholder voters. It is further alleged in the answer that 24 of the signers of said petition were owners of the absolute fee to lands within said town, and that one Hans Helgeson was a legal freeholder voter, and had a legal freehold estate and interest in lot 5, block 3, of said town by virtue of a contract of sale thereof, entered into between said Hans Helgeson and one Chloe Dillman on the 26th day of October, 1910, whereby the said Chloe Dillman, in consideration of the sum of $80, agreed to convey by warranty deed the fee-simple title to said lot to said Hans Helgeson on the 1st day of November, 1911, and that Helgeson under and by virtue of said contract had paid $40 of the consideration for said lot, and had made all payments and done all things required under and by virtue of said contract, and had been put in quiet and peaceable possession thereof since the date of said contract, had paid all taxes and assessments thereon since said contract was made, was holding the same in good faith, and was financially able to pay, and would pay, the balance of the purchase price for said lot and

secure a warranty deed therefor on the 1st of November, 1911; that the said Chloe Dillman at the time said contract was made was the owner in fee of said lot; that said contract was acknowledged so as to entitle it to record, and on the 1st day of November, 1910, was duly recorded in the register of deeds office of said county. To this answer plaintiff demurred on the ground that it did not state a defense. An order was made by the trial court sustaining the demurrer upon the specific ground that Helgeson was not a legal freeholder voter.

Defendants elected to stand upon the answer, and appeal from a judgment granting a peremptory writ prohibiting further proceedings on the submission at said election of the question of selling intoxicating liquors. The sole question presented is whether Helgeson was a legal freeholder voter, and qualified to sign the the petition. It is conceded that, if Helgeson was not a freeholder, the village trustees had no jurisdiction in the premises, and were not authorized to submit the question to a vote.

[1] Section 1, c. 166, of the Session Laws of 1903, provides as follows: "At the annual municipal election held in any township, town or city in this state for general municipal purposes, the question of granting permits to sell intoxicating liquors within the corporate limits of such township, town or city shall be submitted to the legal voters thereof upon petition signed by twenty-five (25) legal freeholder voters of such township, town or city, to be filed with the clerk or auditor of such township, town or city thirty days before election, which petition shall state that a vote is desired upon such question." It is conceded that Helgeson was a qualified legal voter of the village of Revillo, but respondent's contention is that upon the facts above set forth he was not a freeholder. If the contract above referred to vested in Helgeson a freehold estate, he was qualified as a signer of the petition. Section 241 of the Civil Code provides: "Estates in real property in respect to the duration of their enjoyment are either, (1) Estates of inheritance or perpetual estates. (2) Estates for life. (3) Estates for years, or (4) Estates at will." Section 245: "Estates of inheritance and for life are called estates of freehold; estates for years are chattels real; and estates at will are chattel

interests, but are not liable as such to sale on execution." Any estate in real property (except an estate for years and an estate at will) which may descend as real estate upon the decease of the holder of such estate is a "freehold" as defined by section 245, Civil Code, supra. The statute defining the qualifications of a signer of a petition make any "freeholder" of the township, town, or city competent as a signer. What constitutes a "freeholder" within the meaning of this statute? Can the statute by any possible or reasonable construction be made to mean anything else than that the holder of a freehold estate as defined by section 245 is a competent signer? Can it be made to mean anything else than that the holder of an estate which may pass as real property by inheritance, or the holder of an estate for life, in real property, is a "freeholder"? Section 2444, Civil Code, says: "Whenever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase when ever it occurs except where a contrary intention plainly appears." Section 245, supra, defines a "freehold estate," and it seems too plain for discussion that any person who holds a life estate or an estate in real property which may be inherited as real property is a "freeholder." State v. Kokomo, 108 Ind. 76, 8 N. E. 718. Under this statute, it is wholly immaterial that a life estate limited upon his own life cannot descend to the heirs of the holder of the estate because the estate determines upon his death. The statute in effect declares that the holder of a life estate may sell and transfer his estate, and that the transferee would become a "freeholder" by reason of acquiring the freehold estate. Respondent's argument, founded upon the supposed illogical results which might follow from a contract to purchase a life estate, is without convincing force under the plain provisions of the statute which declare that a life estate limited upon the life of the holder is a freehold, as well as an estate limited upon the life of a third person. A considerable amount of very technical logic is expended upon the words "inheritable estate" and "equitable conversion," and the remarkable conclusion is reached that the holder of a contract for the purchase of a life estate limited upon his own life could not be a freeholder because his own

heirs could not inherit the estate which by its conditions terminates upon his death.   But the fact that his own particular heirs may not inherit the estate is not decisive of the inheritable quality of the estate itself.   The holder of a life estate, whether the estate be limited upon his own life or upon the life of another, may alien the estate, and, if the purchaser dies before the person on whose life the estate is limited, the heirs of the purchaser will inherit the remaining life estate.   Respondent by the same sort of logic might easily demonstrate that the holder of an estate in fee simple absolute does not possess an "inheritable estate" when forsooth it happens that the owner of the estate is without heirs to inherit.   It seems clear that any estate which may pass by inheritance, whether it be held as a life estate or in fee simple absolute is an "inheritable estate," even though the class of persons who may take the estate be limited by the terms of the tenure or by the provisions of the laws of inheritance.

[2]  Respondent's argument appears to ignore the fact that an "equitable estate" in real property is as truly an inheritable estate as is a legal estate or an estate held in fee simple absolute, and that the true test as to whether the estate is inheritable and hence a freehold does not depend upon the class of persons who may inherit, but upon the question whether the estate itself is capable of passing by inheritance.   That a life estate whether for the life of the owner or of another person may pass by inheritance to the heirs of the grantee of the holder of the life estate is so well settled that a citation of authorities is unnecessary.   And, should doubt exist as to respondent's conclusions upon the doctrine of equitable conversion and inheritable estates as applied to life estates, it may be noted that our own statute conclusively settles any question as to the freehold character of both classes of life estates.   Section 245, C. C., declares that a life estate is a freehold, and section 246 declares that an estate during the life of a third person is also a freehold estate.   In either case the life estate is alienable, and is inheritable by the heirs of the alienee. It follows that a purchaser of a life estate limited upon his own life acquires an alienable freehold estate, descendible to the heirs of his alienee, whenever the contract of purchase by its terms

vests in him the equitable right to the life estate, precisely as he would under a like contract for the purchase of an estate in fee simple absolute. But we deem it unnecessary to pursue this discussion further, as the question of life estates has only an indirect relation to the question which is vital in the determination of this appeal. The real question is whether under a contract for the purchase and sale of real property the vendee acquires an inheritable, and hence a freehold, estate in realty. Only this question remains for solution: What interest or estate was acquired by Helgeson in the real property which was the subject of his contract?

[3] It may be conceded that where a contract for the purchase and sale of real property by its terms discloses that it is the agreement and intent of the parties that no interest, legal or equitable, shall vest in the vendee until the happening of a future event or the performance of some condition subsequent—such for example as the payment of the purchase price—the vendee acquires no estate, legal or equitable, in the real property until the happening of the event or the performance of the condition. 1 Warvelle on Vendors (2d Ed.) §§ 175, 176. Likewise, where the contract constitutes merely an option to purchase, no estate, legal or equitable, vests in the vendee until the option is exercised. Especially is this true where time is made of the essence of the contract. Stembridge v. Stembridge, 87 Ky. 91, 7 S. W. 611; Richardson v. Hardwick, 106 U. S. 252, 1 Sup. Ct. 213, 27 L. Ed. 145; Bras v. Sheffield, 49 Kan. 702, 31 Pac. 306, 33 Am. St. Rep. 386. See note "c," Bowen v. Lansing, 57 L. R. A. 643. But under the ordinary executory contract for the purchase and sale of real property the authorities are practically unanimous in holding that in equity the estate from the making of the contract is regarded as the property of the vendee, attended by most if not all the incidents of ownership, when the vendee has been put into possession of the property, while the purchase money is considered as belonging to the vendor. 1 Warvelle on Vendors (2d Ed.) § 174, says: "This result is accomplished by the application of the familiar principle that equity looks upon things agreed to be done as actually performed, and hence a contract for the sale

of land is for most purposes regarded in equity as if already specifically executed. * * * The relation, therefore, is analogous to that of equitable mortgagor and mortgagee, the vendor holding the legal title as security for the unpaid purchase money, which security it has been held is essentially a mortgage interest. The vendee has an equity of redemption and the vendor a correlative right of foreclosure upon default in the payments. But in this, as in all similar cases, the mortgage is the incident, the debt the principal, and the vendor has no further interest except to the extent of the security the mortgage affords for his debt. Subject to these rights of the vendor, the vendee has absolute control of the property, and may dispose of it or incumber it in exactly the same manner as land to which he has the legal title"—citing authorities. See, also, sections 175, 185. "Where the purchaser has been let into possession, he is in equity the owner, subject only to the lien of the vendor for the unpaid purchase money. He has a right to the free use and enjoyment of the property and to the rents, issues, and profits thereof, so long as he is not in default under the contract. He may mortgage it for the payment of his debts, may sell and assign his rights to another, or may create a privilege or easement upon any part of the premises which will be valid and binding, but liable to be defeated should there be a failure to pay the balance of the purchase money according to the terms and conditions of the contract of purchase. The vendor in such a case cannot interfere with the free use and enjoyment of the premises by the vendee, or with any one having a privilege from such vendee, provided that there is no lessening of the security for the purchase money occasioned thereby." Volume I, § 181. "As the property is regarded as belonging to the vendee from the time of the delivery and acceptance of the written contract, it follows that any loss arising from deterioration between the agreement and conveyance falls upon and must be borne by him. Hence, if any of the buildings or improvements are destroyed by fire during this period, the vendee must bear the loss, unless there is an agreement to deliver possession with improvements in the same condition as at the time of sale, or unless the loss occurs by the culpable negligence of the vendor. It is the

duty of the vendee to protect himself against loss, and, failing in this, he must bear the same if any is entailed." The conclusions announced by the distinguished author are sustained by citations of the highest authority. 6 Pom. Eq. Juris. c. 42. Some allusions were made in argument to the doctrine of equitable conversion. It is apparent that this doctrine has only an indirect application to the propositions under discussion in this case. The authorities we believe to be practically unanimous in sustaining the views expressed by the learned author from whose work we have quoted somewhat extensively. The contract is not set out in the record on this appeal, nor does the pleading disclose any optional or conditional provisions therein. It cannot be presumed from the language of the pleadings that the contract is anything more or less than a simple contract for the purchase and sale of real property. We reach the conclusion, therefore, in accordance with the practically unanimous decisions of all the courts of highest authority, that under this contract Helgeson, the vendee in possession, became vested with the entire equitable estate in the real property which is the subject of the contract, and that the vendor only held and retained the legal title to the same as security for the payment of the unpaid portion of the purchase price. The only question remaining is whether the equitable estate thus vested in Helgeson under the contract is an inheritable estate or interest in real property. If inheritable, it is a freehold estate under the express language of section 245 of the Civil Code, and Helgeson is a freeholder and competent signer of the petition. The doctrine that the equitable estate vested in the vendee is inheritable as real property is so well settled that an extended discussion or citation of authorities is unnecessary. It is likewise immaterial under the authorities whether an equitable estate be created by contract or by operation of law. Its inheritable quality remains.

In Pomeroy's great work on Equity Jurisprudence (volume 6, c. 42, page 1372), treating of equity estates and interests under contracts of sale and purchase of land, the learned author quotes with approval the language of Lord Eldon in Seton v. Slade: "The estate from the signing of the contract is the real property of the vendee. It descends to his heirs, it is devisable by his will,

and the question whose it is, is not to be discussed merely be-
tween the vendor and vendee, but may be discussed between the
representatives of the vendee." Again (section 840) the author
says: "Thus where the vendee dies having a contract for lands,
but, the conveyance has not yet been made to him, the vendee's
interest in the lands shall be considered as real estate and descend
to his heir, or he may devise them by will, and his representatives
shall pay the purchase money out of the assets." In Loventhal v.
Home Ins. Co., 112 Ala. 108, 20 South. 419, 33 L. R. A. 258, 57
Am. St. Rep. 17, cited by the author, it is said: "As land, the
vendee may convey or devise it, and, as land, it is descendible to
his heirs, who may, in a court of equity, compel specific per-
formance of the contract." Again, at section 847, the author
says: "Lands contracted for pass by the devise of the vendee,
and his executor must pay the purchase price out of the per-
sonalty. Even though the devise is general as, 'all my lands,' it
passes the equitable title of lands contracted for by the vendee.
A devisee can bring suit to compel specific performance of the con-
tract." In 1 Warvelle on Vendors (2d Ed.) p. 224, the same doc-
trine is announced. "The equity which is vested in the vendee
is a proper subject of devise by him, and will descend to his heirs
the same as realty. The same rights which were possessed by
their ancestors will devolve on them, and they may have an en-
forcement of the contract in their own favor. Hence where there
is a contract for the purchase of land, inasmuch as it descends in
equity to the heirs of the vendee as real estate, they may call on
the executors or administrators to discharge the contract out of
the personal estate so as to enable them to demand a conveyance
from the vendor." And in passing we may observe that it is in
connection with the descent of real property that the doctrine of
equitable conversion has its appropriate and most frequent appli-
cation. In the case of Clapp v. Tower, 11 N. D. 556, 93 N. W.
862, under a statute identical with our own, the question under
discussion was directly passed upon by the Supreme Court of
North Dakota in a carefully considered opinion by Mr. Justice
Young, in which the rule laid down by Mr. Pomeroy in his work
on Equity Jurisprudence is approved and adopted. The question

arose between the executors and heirs and devisees under the will. The court says: "The rule is uniform, we think, that, where a valid and binding contract of sale of land has been entered into, such as a court of equity will specifically enforce against an unwilling purchaser, the contract operates as a conversion." It was there held that, upon the death of a vendor, all his interest passes to his executors as personalty, and that the vendor holds the legal title only as trustee and as security for the performance of the contract by the vendee. To the same effect is Bowen v. Lansing, 129 Mich. 117, 88 N. W. 384, 57 L. R. A. 643, 95 Am. St. Rep. 427. See, also, Woodward v. McCollum, 16 N. D. 42, 111 N. W. 624; Croxall's Lessee v. Sherrerd, 72 U. S. 268, 18 L. Ed. 572; Commonwealth v. Briucher, 41 Va. 826.

Only one decision is cited by respondent which is apparently in conflict with the conclusions here reached, and that is the case of Cohn v. Wellivar, 84 Neb. 230, 121 N. W. 107. In that case language is used by the court which it must be conceded tends to sustain respondent's contention, but the decision is based largely, if not wholly, upon the definition of a freehold estate by Justice Holcomb, cited in 20 Cyc. 843, where it is said: "From the definitions given, it will readily be seen that, in order to be a freeholder, a person must have a property right in and title to real estate amounting to an estate of inheritance or for life, or for an indeterminate period. What is required is title to the property, and not simply a contingent or an expectant estate, nor a right of occupancy, or a privilege with power to prevent alienation or incumbrance by the holder of the legal title." The language quoted is absolutely in line with the authorities above quoted and the conclusions we have reached in the case at bar. Under this definition, a person having a right and title in real estate amounting to an estate of inheritance or for life is a freeholder. "What is required is a title to the property" are words in this definition to which respondent apparently attempts to attach the meaning that the "title" referred to can be nothing else than a legal title. The language of Judge Holcomb does not warrant such a conclusion, but clearly does sustain the conclusion that, to be deemed a freeholder, a person must have a property right in real estate

"amounting to an estate of inheritance."   Respondent's confusion in the application of this definition apparently arises from overlooking the universally admitted rule above stated, that an equitable interest or estate in real property is equally inheritable with a legal estate, and that both are freehold estates.   The case of Marica v. Yost, 85 Neb. 842, 124 N. W. 460, cited by respondent, goes no further than to hold that a petitioner must be a bona fide freeholder, and is decided upon the ground of fraud and a colorable attempt of the signor to qualify as a freeholder.   In the case of Cohn v. Wellivar, supra, cited by respondent, the same question of bona fide freeholder is also involved, and, while the decision contains language which perhaps sustains respondent's contention, the court very strongly intimates that the contract there construed did not purport to vest in the vendee any present interest in the real estate, but might be considered merely an agreement to sell in the future, upon compliance with terms and payments stipulated in the contract, and that no purpose was disclosed to vest any present interest in the purchaser, nor to give any right to claim any interest, until the terms of the contract were fully met.   This decision rests upon the definition of Judge Holcomb above quoted, which in our judgment does not sustain the conclusion announced.   In the case of Hannah v. Shepard, (Tex. Civ. App.) 25 S. W. 137, the exact question was passed upon which is before us upon this apeal.   The court there said: "We are of the opinion that the court did not err in holding that the petition for the election was signed by 20 freeholders.   The signers who had not paid for their land were equitable freeholders, and the one who was not in possession of the land he had contracted for had the right of possession."   Goodwin v. Board of Education, 38 Mich. 95.   The case of Commonwealth v. Reynolds, 31 Va. 663, cited by respondent, was decided many years ago, and the question as to what constitutes a freehold estate appears to have been but very casually considered by the court.   In our opinion the ruling should be given but little weight in this discussion.   Respondent's contention is, in effect, that the Legislature intended to qualify as signer of a petition only the holder of the legal title.   But this contention utterly ignores the very language

of the statute itself, which says, not that the owner of the legal title or the owner of the equitable title is qualified as a signer, but that the owner of a freehold estate is qualified, and as it must be conceded that either a legal or an equitable estate in real property is a freehold, it would be a plain preversion of the language of the statute, and of the legislative will as therein expressed, for this court to decide that only the holder of the legal title is so qualified.

[4] It has been suggested that one person may be vested with the "legal freehold estate" in  real property, while another holds the "equitable freehold estate," and that, as both cannot be qualified signers of a petition, this court must decide which of the two the Legislature intended to qualify as a signer of the petition.  The conclusion would perhaps be unavoidable if the premise were correct; but we do not think the premise can be sustained for the reason that two persons cannot own the same identical thing at the same time.  What do the words "estate" and "title" mean?

The term "estate," as descriptive of rights in property, "signifies the quantity of interest which a person has, from absolute ownership down to naked possession" (Bouvier, L. D. 692), while "title" is "the means whereby the owner of lands has the just possession of his property" (Bouvier, L. D. 121).  As between vendor and vendee of real property, the term "estate" may be defined to be "an interest in real property which confers the right to a full and complete or to a limited, beneficial use of the property itself."  The "title" and the "estate" are not identical.  The "title" may be said to be the evidence of the right.  Formerly the equitable right or title could only be exhibited in  a  court of chancery.  But either in law or in equity the substantial thing—the estate—is the same, the right to a beneficial use of the property itself.  One person may hold the legal "title," while the "equitable title" or right is held by another.  But the same estate—the right for example to the full, perpetual beneficial use of property—cannot be vested in one person, while the equitable estate or right to the full and perpetual use of the same property is vested in another (except, perhaps, certain classes of express trusts), for the simple reason that the same thing cannot be in two separate and

distinct places at the same time. But when the right to the complete unconditional and perpetual beneficial use of (or equitable title) has become vested in one person by contract or operation of law, while the legal title is in another (except when held as security only), a court of chancery will compel a transfer of the legal title to the holder of the equitable estate or title, because the legal title and the right to the beneficial use should be united in the same person. As we have shown, when the naked legal title is vested in a decedent, and the equitable estate in another, the heirs of the decedent acquire no estate whatever in real property. The naked legal title passes to them, but no estate, for the simple reason that the estate, not being in the ancestor, cannot descend to his heirs. If in such case two estates could exist at the same time—the legal estate in the decedent and the equitable estate in another—the legal estate would certainly descend to the heirs. But no court has ever so held. It is granted, of course, that a vendor of real property may carve out of his complete estate and sell a limited portion, such as an estate for life or for years, and retain the residue in himself; and in such case the residue of the estate would descend to his heirs as real property. But no case has been found holding that any estate in real property ever vested in heirs, where the contract of the vendor is intended to convey and vest his entire beneficial interest in the property in the vendee. It would seem illogical, therefore, to say, as respondent contends, that there can never exist an equitable estate in real property, unless there exists at the same time a legal estate in some other person. The right to the same "beneficial use of real property" cannot exist in two persons at the same time. But the legal title to real property may be in one person while the equitable title or right is in another, and the confusion of thought arises from assuming that the legal title always confers, or has back of it, the estate, the right to the beneficial use of the property, thus confusing the "title" with the "estate." It may be granted, of course, that an equitable title or right to real property cannot exist without legal title to the property vested somewhere. The same confusion of thought inheres in the suggestion that a person must bring an action in a court of

chancery before he can acquire an equitable title or estate. The "title" and the "remedy" are confused. It is only when the rights of the holder of the title, whether it be legal or equitable, are denied him, that the holder of the estate is compelled to enforce his rights in a court, and the necessity for legal proceedings to enforce the holder's rights when denied is the same whether his title be legal or equitable. In either case the judgment or decree of the court may become incontrovertible evidence of the title and of the right to the estate, but the title or right existed before the judgment or decree. Were it not for the dual aspect of the question presented by discussions of courts and law writers, as to the effect of executory contracts for the sale of land at law, and in equity, two minds could hardly differ as to conclusions.

But these different aspects of estates and titles and rights of parties under such contracts had their origin in differences of procedure in the common law and chancery courts, which do not exist in states like our own, which have abolished the distinctions between law and equity as rules of right, and have but a single court with jurisdiction to ascertain and adjudicate all such ultimate rights in a single action. This change in jurisdiction and procedure renders inoperative and practically destroys the common-law rules governing substantive rights, in so far as those rights were dependent upon or grew out of the modes of procedure in common law and chancery courts. It is apparent that the rules of equity which determine ultimate substantive rights now supersede and render ineffectual any technical rules of the common law which were in conflict with or which made inapplicable those equity rules. Under the rules of law as formerly administered, the vendor in an executory contract for the sale of land remained to all intents and purposes the owner of the land (Pomeroy's Equity Jurisprudence, § 367), while in chancery courts the vendee was looked upon and treated as the owner of the land, and an estate was vested in him commensurate with that provided for by the contract, whether in fee, for life, or for years (Id. § 368). It follows that the equity rule as to rights of parties and conditions of titles and estates should be adopted by our courts.

Speaking of the class of contracts under discussion, the learned author, Mr. Pomeroy, says: "The equitable interest of the vendor is correlative with that of the vendee. His beneficial interest in the land is gone, and only the naked legal title remains, which he holds in trust for the vendee, accompanied, however, by a lien upon the land as security when any of the purchase price remains unpaid. This lien, like every other equitable lien, is not an interest in the land, is neither a *jus ad rem*, nor a *jus in re*, but merely an encumbrance." The conclusion seems clear that as between vendor and vendee any contract which operates to vest the equitable estate in the vendee divests the vendor of his entire estate, and that the vendor cannot thereafter be considered a freeholder for any purpose. Equally clear is the conclusion that the vendee becomes a freeholder. It has been suggested that the application of the law itself by municipal officers charged with its administration would be rendered simpler and easier if we should decide that the holder of the legal title only are qualified signers of a petition. But is it not clear that it requires not less legal information on the part of municipal officers to know that the holder of the naked legal title is not a freeholder than to know that the holder of the equitable title and estate is a freeholder? We believe that, when the Legislature said "freeholder," they meant "freeholder"—nothing more and nothing less—and we do not believe that this court by a construction founded upon technicalities of procedure applied to English land tenures and the Feudal law should give the language of the act an interpretation which excludes a class of freeholders plainly within its terms. It is conceded that the term "freeholder" includes the holder of the equitable estate.

[5] Had the Legislature intended to qualify only those who were the holders of fee-simple titles, that purpose could have been easily expressed by the use of appropriate words in the act itself. This court must and should construe the law as the legislative wisdom has seen fit to express it in language used in the act itself. We have no more authority to exclude persons competent as signers under the terms of the act than we have to add others not described therein. To do otherwise would justly subject the

court to the criticism so frequently heard in recent years, that courts are not content to recognize the will of the people as expressed by the language used in legislation, but are prone to usurp the legislative function by ingrafting upon legislative acts their own views as to what the law should be. And, even were it within the legitimate function of the court to consider or discuss the wisdom of legislative enactments, we see no reason why the Legislature in the act under discussion may not properly have considered that one who has contracted for and is in actual occupancy of a home and is the equitable owner thereof is interested in the moral duties of citizenship in the community equally with his more fortunate neighbor who has already paid for and obtained legal title to his home. It is conceded on this appeal that Helgeson was put in possession upon the execution of the contract of sale, has remained in possession ever since, has made improvements and paid taxes, and is able and willing, and intends to fulfill all the conditions of the contract and to pay the remaining portion of the purchase price when due, and obtain a deed from the vendor. His entire good faith in the purchase of the property or in the signing of the petition is not questioned on this appeal. We are clearly of opinion he became vested under the contract with a present inheritable freehold estate in the purchased property, and that he was a freehold voter qualified to sign the petition.

The order of the trial court sustaining the demurrer is reversed, and the cause remanded for further proceedings according to law.

WHITING, J. (dissenting). While I agree with many things announced in the foregoing opinion, yet it seems to me that my colleague has, at several points in his discussion, started from false premises, and that, as a result, he has reached conclusions, some of which, while correct, rest upon reasons other than those advanced, others of which, and particularly the ultimate conclusion, being erroneous.

I had supposed all would agree that there was not within this state a thing—real, personal, or mixed—the subject of prop-

erty in and to which there was not at all times vested somewhere a title known as "legal," carrying with it an interest in such property known as the "legal estate." I had also supposed that such "legal estate"—whether it be the estate known as the fee simple, or whether it be one of the least known to the law, whether it be one in possession or one in expectancy, whether it be vested in one or in many persons, whether it may have had cut out of it and transferred to other owners, lesser legal estates, or whether its ownership may have passed to one holding a larger estate and it thus have become merged in such larger estate, whether it be incumbered by liens or bounden by contracts and agreements conferring upon others interests in or to the subject of property or in or to the said estate—never ceased to exist except the subject of property itself ceased to exist. My colleague seems to be of the view that there may exist what is known as an "equitable estate" of such magnitude and importance that it, for the time at least, absolutely wipes out of existence the so-called legal estate. To such proposition I must dissent, as I believe it to have no support in reason, and surely none in authority. It would seem from reading the foregoing opinion that my colleague has fallen into his error from assuming that there could be no "estate" held by a person, except it carried with it the right to the present beneficial use of the property. This is certainly error.

It has well been said that an "estate" in property "signifies the state, condition, or circumstances in which the owner stands in regard to his property, and has relation to the quantity or interest which the tenant has therein, and the time at which that quantity or interest is to be enjoyed, as well as the number and connections of the tenants." Title is "the lawful cause or ground of possessing that which is ours. It is that which is the foundation of ownership of property, real or personal." Hunt v. Eaton, 55 Mich. 362, 21 N. W. 429. "Title has respect to that which is the subject of ownership, and is that which is the foundation of ownership, and with a change of title the right of property in the owner passes." Springfield F. & M. Ins. Co. v. Allen, 43 N. Y. 389, 395; 3 Am. Rep. 711. In short, "estate" is that which

one owns; "title" is that through and by virtue of which one acquires such estate. There is no property in this state the legal title to which was not originally either in some person or in the United States or the state (section 191, Civ. Code), which legal title vested in its holder the legal estate. The only manner in which such legal estate can pass out of its original owner—unless the subject of the estate ceases to exist—is through the vesting of the legal title in some other party. One of the many ways of creating a legal title and transferring the legal estate is by the execution and delivery of what is termed a conveyance. Under the express provisions of the statutes of this state (section 987, Civ. Code), an executory contract for the sale or purchase of land is not a "conveyance." I am unable to understand how the legal estate originally existing can be destroyed by the holder thereof merely executing an instrument not of the dignity of a conveyance. I will concede that it is within the power of the people, through statutory enactment, to make of a purported executory contract for the sale of land a legal conveyance passing the estate therein described together with the legal title thereto to the grantee therein named. Warvelle in his work on Vendors, at section 400, says: "Estates are classed as legal and equitable, the former being those which have their origin and derive their qualities and incidents from the common law, and the latter those which are derived from the rules and principles which prevail in courts of equity. Formerly every estate was legal in the proper acceptation of that term, and in the contemplation of law there is and can be but one estate, which may properly be denominated the legal estate. But the introduction of what were known as uses, and the subsequent origination of trusts, where one party held the title but upon some trust or confidence for another, early led the court of chancery to take cognizance of the rights of the beneficiary, and thus there grew up a double ownership of lands thus situated, the interests which were cognizable as such only in a court of equity taking the name of equitable to distinguish them from legal estates." Thus it is seen that prior to the statute of uses (27 Henry VIII) the cestui que use had no legal title, and hence no legal estate, in the land; such title and estate being in the

"grantee to use." The chancellor recognized and enforced the rights of the cestui que use, and his interest under the deeds became known as an equitable estate, exactly as the interest of the vendee under an executory contract for sale is now known and for the same reason, to wit, because it was only in a court of equity that such rights or estates were recognized and protected. Then came the statute of uses, declaring that, in case of the ordinary "deed to use," the title should vest in the cestui que use, thus merging into one the legal and equitable estates, and vesting them so merged in the former holder of the equitable estate. In like manner our lawmakers might enact a law providing that upon the execution of such a contract as the one before us the title should pass to the grantee. Such legislation might be wise, but without it the legal title and estate remain with the vendor until he sees fit to execute the deed agreed upon, or until, in case the vendee has done everything required by him under the contract and has thus become vested with the equitable title, a court compels a deed conveying the legal estate to be executed by the vendor or by some party empowered to act for and in the name of the vendor. It must also be remembered that there is an important distinction between title to an equitable interest or estate in a freehold and an equitable title to a freehold. The vendee in an executory contract for the sale of land has the first before a single covenant upon his part has been performed, but he has not the equitable title to the freehold until he has performed all of his covenants. Warvelle says: "The essential feature of an equitable title is that it is one which appeals to equity for confirmation and enforcement. Hence a mere contract or covenant to convey at a future time on the purchaser performing certain acts does not create an equitable title. It is only when the purchaser performs or tenders performance of all the acts necessary to entitle him to a deed that he has an equitable title and may compel a conveyance. Prior thereto he has, at best, only a contract for the land when he shall have performed his part of the agreement." Warvelle on Vendors, § 176.

I concede that the present beneficial use of property cannot be in different persons at one and the same time where the said

use rests upon separate and distinct estates, whether such estates be legal or equitable, but we should not lose sight of the fact that where, under the provisions of an executory contract for the sale of lands, the vendee is let into possession of the premises, such vendee does not hold such possession by virtue of the executory covenants for the sale of the premises, but holds same under and by virtue of an executed agreement or covenant, an agreement that amounts to a conveyance, an agreement that might be enforced in a court of law as distinguished from a court exercising equitable jurisdiction, an agreement that creates a legal title to, and vests in the vendee, a legal estate as tenant at will. 1 Tiedeman on Real Property, § 216; 1 Washburn on Real Property, 622. The executory covenants in the contract before us are what creates the equitable estate, and not the agreement letting the vendee into possession. Such possession and the agreement therefor vest in the vendee certain legal rights entirely unessential to his equitable estate, and these rights are of a nature that could be enforced in an action at law. The holding of possession by the vendee is under and not adverse to the title and estate of the vendor. Perhaps as clear a distinction between an executed and an executory contract is that given in 9 Cyc. 244, where it is said: "An executed contract of sale is a bargain and sale which has passed the property in the thing sold, while executory contracts of sale are contracts as opposed to conveyances and create rights in personam to a fulfillment of the terms, instead of rights in rem to an enjoyment of the property passed." It should be borne in mind that by abolishing the court of equity as a separate court and extending its jurisdiction to a court having also the so-called "legal" jurisdiction we have only changed the identity of the body through which well-recognized remedies may be obtained. Not only have substantive rights been in no manner changed, but the remedies left to parties are identically the same as before. At the best, the remedies are but more readily obtained in that one court may grant all the necessary relief. It follows that until the statutes shall, by express provisions, do away with what are known as "equitable estates" under executory contracts for sale of land by declaring that such contracts shall carry

the legal estate and title to the vendee, there must remain in the vendor the legal title and estate.

From what has been said above it follows: That there may be a legal estate existing in a piece of property without any existing equitable estate therein, but never an equitable estate except there is also a legal estate. Pomeroy in his great work soys: "An equitable estate, in its very conception, and as a fact, requires the simultaneous existence of two estates or ownerships in the same subject-matter, whether that be real or personal, the one legal, vested in one person, and recognized only by courts of law; the second equitable, vested in another person, and recognized only by courts of equity. These two interests must be separate, and as a rule must be held by different persons; for, if the legal estate and the equitable estate both become vested in the same person by the same right, then, as a general rule, a merger takes place, and the legal estate alone remains." 1 Pomeroy's Equity Jurisprudence (3d Ed.) § 147. If there is one person vested with the legal freehold estate in a tract of land and another with the equitable freehold estate therein, certainly but one of such parties is competent, as such freeholder, to sign a petition such as the one before us 'for consideration. It follows that my colleague is in error when he denies that the only thing for our determination is as to which one it is, the legal or equitable estate, the possession of which our lawmakers intended should qualify one to sign such petition. The determination of this question is absolutely unavoidable. My colleague says: "And the true test as to whether an estate is inheritable, and hence a freehold, does not depend upon the class of persons who may inherit, but upon the question whether the estate itself is capable of passing by inheritance." With such proposition I must take issue. Whether or not an estate is a freehold does not and never did depend upon its inheritable quality. My colleague has cited State v. Kokomo, 108 Ind. 76, 8 N. E. 718. A reading of the same will reveal that it has no bearing whatsoever upon the proposition in support of which it is cited. Originally at common law no life estate was inheritable, yet it was a freehold estate. Today, under our statutes, any estate, whether in real or personal property, will pass by in-

heritance providing the estate is of a nature to survive the death of the holder thereof, and yet the freehold estate of today includes, as at common law, only fees (base and simple) and life estates. The basis for the classification of estates into those of freehold and those not is clearly shown by the definition of "freehold" in Black's Law Dictionary: "An estate in land or other real property of uncertain duration; that is, either of inheritance or which may possibly last for the life of the tenant at least (as distinguished from a leasehold), and held by a free tenure (as distinguished from a copyhold or villenage)." If by statute tomorrow all estates, even fee simple, became uninheritable, the fees and life estates would still remain freeholds as the quality (of uncertain duration) that makes them freeholds would still remain. There can be no question but that under the contract in question Helgeson acquired an equitable estate in the freehold, that such estate is inheritable, being made so by statute, but that it is a freehold for reasons separate and distinct from the quality of inheritability.

My colleague discussed, to considerable extent, the rule of equitable conversion, and I fully agree with what he says in relation thereto, except as to its bearing upon the question before us. With this part of his opinion I am unable to agree, as it seems to me the question of equitable conversion has absolutely no bearing thereon. The necessary result of the majority opinion herein is to render the vendee under a purely executory contract a competent signer of one of these petitions, though, under our statute, his contract is not a conveyance and is not protected by our recording acts. Applying it to case at bar, it would result in holding Helgeson a qualified signer if his contract had been purely executory in all its terms and no possession given thereunder. I cannot subscribe to any holding that must bring such a result, where there is nothing in the wording of the statute to warrant it. Let us recognize the legal estate as the one which qualifies its holder to do whatever the statute may empower the holder of an estate to do, and not resort to the doctrine of equitable conversion in order to qualify a party to perform an act pertaining to citizenship. When parties enter into a contract for the sale

of land, they, by their contract, allow the legal estate to remain in the vendor, and at best vest but a mere equitable estate in the vendee. The equitable estate may never ripen into a legal estate and the legal estate may never pass from the present holder thereof. The legal estate may always remain greater in value than the equitable estate which may be and may always remain merely nominal in value, or such legal estate may gradually dwindle until it is merely nominal in value and the beneficial interest pass almost entirely to the holder of the equitable estate, but so long as, under their contract, the legal estate is by right vested in the actual holder thereof, the other party can have no claim for the same and can acquire no right dependent thereon. It is for this court merely to determine whether the Legislature intended the owner of the legal estate to be the signer of a petition or the owner of the equitable estate. It cannot be both, and we are not at liberty to, and the Legislature certainly did not intend to, invest any person or tribunal with power to, in each case, make an inquiry into the relative values of the two estates and grant the right of petition to the holder of the estate greater in value, nor to the party in possession, who might perchance be some party other than the holder of either the legal or equitable freehold. It would seem that there is no escape from the conclusion that the person who holds or is fully entitled to be vested with the legal freehold estate is the proper signer of a petition, and that nothing short thereof is sufficient to qualify him as such signer.

The first two cases below hold that, where one is the real owner of the legal title, he will be treated as a freeholder, though some one else holds the naked legal title for him. It was held in Twp. of Bernans v. Twp. of Warren, 15 N. J. Law, 447, that, where a freehold estate in land is conveyed by A. to C. in trust for B. during the term of his life and from and after his death to his wife and then to his heirs, B. was seized of a freehold estate sufficient to give him a settlement in the county where land was situate, there being a statute establishing a settlement in a party holding a freehold estate in land. It was held in Goodwin v. Bd. of Ed., 38 Mich. 95, that "a person for whose sole benefit an undivided interest in fee is held by another in trust absolute

appearing on the conveyance is a freeholder." In the case of People v. Hynds, 30 N. Y. 470, the writer of the opinion held that a contract for the conveyance of a freehold interest in land upon the payment of certain sums covenanted to be paid under said contract did not make the holder of the equitable interest a freeholder, the justice saying: "He had an equitable title which might perhaps be converted into a legal title. The statute, by freeholders, means such as have the legal title to real estate, such as are freeholders without a proceeding in court to make or entitle them so." It is true that in this case the justice based his decision upon other grounds as well as the fact that the vendee in the contract was not a freeholder, and that the other judges concurred in the decision upon one of the other grounds. In the case of of Commonwealth v. Reynolds, 31 Va. 663, the question now before us was squarely before the court, and was passer upon. The statute of Virginia provided that a person must be a freeholder to qualify him as a grand juryman. It appears that one Smith, the holder of a freehold estate in land, had covenanted to convey this land to Monroe upon Monroe's performing certain covenants upon his part, but it does not appear that Smith had actually conveyed the land or that Monroe was yet vested with an equitable title; that is, that he was yet entitled under the contract to demand a conveyance thereof. The court held that Smith, under the above circumstances, was a proper juryman. It must therefore follow that Monroe would not have been one; and that, as applied to the facts in this case, Dillman, if a voter, would have been a proper petitioner and that Helgeson was not.

No state has gone farther in recognizing the doctrine of equitable conversion, as applied to the administration and distribution of estates, both in legislative enactments and in the decisions of its courts  than has the state of Nebraska.  See Cutler v. Meeker, 71 Neb. 732, 99 N. W. 514, 8 Ann. Cas. 951; Hovorka v. Havlik, 68 Neb. 19, 93 N. W. 990, 110 Am. St. Rep. 387.  In the Hovorka Case the court calls attention to their statutes similar to statutes found in our Probate Code.  My colleague finds nothing in the case of In re Cohn, 84 Neb. 230, 121 N. W. 107, conflicting with his views, and holds that there is nothing in Judge

Holcomb's definition of freeholder inconsistent therewith. Granting that Judge Holcomb's words define a freeholder whether legal or equitable, certainly it must be conceded that the court, in its decision in the Cohn Case, was not applying the doctrine of equitable conversion to the executory contracts before it in that case, where in holding that the vendees thereunder were not freeholders it says: "The holdings in this state are not in entire harmony as to the meaning of the term as used in different statutes; but we are not aware of any decision to the effect that persons having less than a title to land are competent signers of a petition for liquor license. * * * Hence the use of the words 'resident freeholders' which must be construed to mean those living within the subdivision holding title to real estate." Any person reading the above decision in full cannot fail to understand that by the use of the word "title," as above quoted, such court had reference to the "legal title." The contracts construed in that case were not mere options, but clearly the ordinary contracts for the sale of real estate and were of the class of contracts to which the doctrine of equitable conversion might apply. As stated in such opinion, they were contracts wherein one party agreed to sell lands to another for a certain consideration, part of which was paid, the other payment to become due in one, two, and three years thereafter, there being the common provision that time should be of the essence of the contract, and that failure to pay should work a forfeiture of the contract. It was covenanted therein that, "in consideration of the stipulations herein contained and the payments to be made as hereinafter specified, the party of the first part agrees to sell unto the party of the second part. * * *"

Certainly the above holdings are directly applicable to the facts in this case, and, if we hold Helgeson to be a lawful petitioner, we can find no support except in the one Texas case (Hannah v. Shepherd [Tex. Civ. App.] 25 S. W. 137), an examination of which shows a mere statement of a conclusion arrived at without any attempt to support the same by reason or authority.

CORSON, J. (dissenting). In my judgment a very important word in section 1, c. 166, Session Laws of 1903, has been

overlooked by the members of the court in their opinion. In that section it is provided: "The question of granting permits to sell intoxicating liquors within the corporate limits of such township, town or city shall be submitted to the legal voters thereof upon petition signed by twenty-five (25) *legal* freeholder voters of such township." It will be observed that the term freeholder is qualified by the word "legal" and we must presume that the Legislature used the term "legal" for the purpose of distinguishing the person holding the legal title from the one holding the equitable title. This court, therefore, has no legal right to substitute the word "equitable" before freeholder or to disregard the clear intention of the Legislature in using the term "legal freeholder voters."

In case of People v. Hynds, 30 N. Y. 470, the learned judge writing the opinion uses the following language: "There was not a certificate of 12 freeholders. Dunkle was not a freeholder. He had not the legal title to the farm. That was either in Hutton or Wieting. Dunkle could not convey. He had an equitable title which might perhaps be converted into a legal title. The statute, by 'freeholder,' means such as have the legal title to real estate, such as are freeholders without a proceeding in court to make or declare them so." Wright, J., concurred with the judge who wrote the opinion, but the others "were in doubt and did not agree with Hogeboom, J." This part of Judge Hogeboom's opinion is quoted in a note in Am. & Eng. Enc. of Law, apparently with the approval of the author. It will be noticed in that case, however, that there was no qualifying word before "freeholders," and I am not surprised, therefore, that inasmuch as the case could be affirmed on other points in which they agreed with the writer of the opinion that they were somewhat in doubt, in view of the decision construing the term "freeholder" without any qualifying words, as including both legal and equitable freeholders. In the case at bar the term "legal freeholder" clearly carries out the intention of the Legislature to make the legal title conclusive as to the qualification of the voter to sign the petition, and that it was not the intention of the Legislature to require the municipal authorites to investigate the question of

equitable title of the freeholder which is often a question of difficulty to determine by learned and able courts.

In the analogous case of Cohn v. Wellivar, 84 Neb. 230, 121 N. W. 107, the learned Supreme Court of Nebraska quotes with approval the following from Campbell v. Moran, 71 Neb. 615, 99 N. W. 498: "From the definitions given it will readily be seen that, in order to be a freeholder, a person must have a property right in and title to real estate amounting to an estate of inheritance or for life, or for an indeterminate period. What is required is title to the property, and not simply a contingent or an expectant estate. Nor a right of occupancy or a privilege with power to prevent alienation or incumbrance by the holder of the legal title." In State v. Ragland, 75 N. C. 12, the learned Supreme Court of that state held as appears by the headnote: "A freeholder is one who owns land in fee, or for life, or for some indeterminate period. As there are legal and equitable estates, so there are legal and equitable freeholds." And the court held in that case that as the term "freeholder" was used without any qualifying word that it might include both legal and equitable freehold estates. In Kirchoff v. Ins. Co., 128 Ill. 199, 20 N. E. 808, the learned Supreme Court of Illinois held as appears by the headnote: "The word 'freehold,' as used in the statute relating to appeals and writs of error, is used in the sense as defined by the common law. It does not include a mere right to do that which in equity will entitle a party to a freehold." In the opinion the court says: "Unfortunately, our rulings have not been entirely harmonious as to what is meant by 'involving a freehold,' as that term is used in the section referred to above; but, without deeming it necessary to review the several cases, we think it may be said that, where the question has been considerd by the court and decided, the decision has, in general (though there has been one exception, and perhaps more), proceeded upon the understanding that the word 'freehold' means as that word was known to and defined by the common law, and that it does not include the mere right to do that which, in equity, will entitle a party to a 'freehold.' See Land Co. et al. v. Peck et al., 112 Ill. 432; Chicago, Burlington & Quincy Railroad Co. v. Watson et al., 105 Ill. 220; McIntire v. Yates et al., 100 Ill. 475."

In the case at bar as I understand the record, it clearly appears that the legal title was not in the person signing the petition, and that all he had was a contract which might ripen into an equitable title in case he complied fully with the terms of the contract. While in equity, therefore, he might have an equitable freehold estate that would pass by inheritance, he would not be the holder of the legal title to the property, and might by a failure to comply with the terms of the contract forfeit all right to even the equitable title. Clearly, therefore, he was not a "legal freeholder voter," and, in the language of Judge Hogeboom, "he had not the legal title. * * * He had an equitable title which might perhaps be converted into a legal title." In the case at bar in the section of the statute above quoted a "legal freeholder," in my judgment, means one who has the legal title to real estate, and who is such without requiring a proceeding in court to make or decide him to be such. 20 Cyc. 843, 14 A. & E. Enc. of Law, 530. "In the construction of a statute it is always important to ascertain the intent of the Legislature, and then carry out that intention. But the intention of the Legislature is to be determined from the language used in the act, and where the words used are plain and easily understood, and there is no ambiguity, there is no room for construction." Matthews v. People, 159 Ill. 399. 42 N. E. 864; U. S. v. Wiltberger, 5 Wheat. 76, 5 L. Ed. 37.

In my judgment, there is no ambiguity in the section of the law above quoted, and the only proper construction to be given to it is that the "legal freeholder voters" are such as have the legal title to freehold property, and does not include equitable freeholders.

In my opinion, therefore, the order of the circuit court sustaining the demurrer to the return should be affirmed.